FAIRBANKS, JR., ET AL., APPELLEES, *v.* THE POWER OIL CO. OF OHIO ET AL., APPELLANTS.

(No. 978—Decided November 10, 1945.)

*Mr. Frank Wiedemann,* for appellees.
*Mr. William P. Moloney,* for appellants.

BY THE COURT. This is an appeal on questions of law and fact from a judgment of the Common Pleas Court of Marion county, and by agreement of the parties is submitted to this court *de novo* upon the transcript of the evidence introduced in the trial of the cause in the Common Pleas Court and additional evidence introduced on the trial in this court.

The action is one in equity for the cancellation of a written lease on certain premises owned by the

plaintiffs, Charles W. Fairbanks, Jr., and Irenea Kraus Lawrence, and situated in the city of Marion, Ohio.

On July 20, 1936, at Marion, Ohio, Anna M. Herman Fairbanks, Charles W. Fairbanks and Ida R. Kraus entered into an agreement in writing with The Power Oil Company of Ohio, a defendant herein, whereby they leased the premises in question to that company. The lease was recorded in the lease records of the recorder's office of Marion county, Ohio. Plaintiffs are the successors and assigns of the lessors, Anna M. Herman Fairbanks, Charles W. Fairbanks and Ida R. Kraus.

Under the terms of the written agreement the lessors leased the premises to The Power Oil Company for a term of five years beginning on September 1, 1936. The lease provided for two renewals thereof for further terms of five years each. The lease was renewed by lessee as therein provided. The first renewal thereof became effective on September 1, 1941, and the term thereof was thereby extended for a period of five years thereafter to September 1, 1946, at a monthly rental of $75 per month. The lease provided also that in addition to paying the monthly rentals therein specified, the lessee should pay all taxes and assessments on the property during the original term and all extensions thereof. It provided further that the lessee should have the privilege of purchasing the property during the first five-year period at $15,000, and if the lease should be renewed for five additional years the lessee was then to have the privilege of purchase at $18,000, and if renewed for the third five-year period lessee should have the privilege of purchasing at $20,000 during this third or last period.

It is provided further in the lease that:

"It is agreed, that said lessee shall not assign this lease, nor under-let said premises, nor any part there-

of, nor permit its interest under this lease to be sold under legal process, without the written consent of said lessor; and that if said lessee shall, without such consent, do or suffer any of the things forbidden to it herein, or if it shall use said premises in any unlawful way or for any unlawful purpose, or if any of said rent shall be unpaid for thirty-one days after it shall have become due, then said lessor may recover possession of said premises and terminate this lease, without reference to the time said lease would otherwise have expired.''

After the execution of the lease on July 20, 1936, The Power Oil Company equipped the property, which was then a vacant lot, by placing thereon three steel tanks of sufficient size to hold carload quantities of gasoline. Provision for handling such carload quantities was made by constructing a pipeline from a siding of The Pennsylvania Railroad Company opposite the freight house of that company on West Center street in the city of Marion. The usual pumps, floodlights, measures, scales and other equipment were installed by the company for the purpose of equipping the premises as an up-to-date oil and gasoline service station. In addition to this equipment a small building was constructed by the company on the premises for the use and accommodation of the attendants and patrons of the station. All this required very substantial expenditures on the part of The Power Oil Company. The result of these improvements was that the company had a first-class filling station and the owners of the property had a non-income vacant lot converted into a very substantial income producing property.

In 1943 the manpower situation was very critical and gas rationing reached its peak, and the company, on account of these conditions, found itself in a posi-

tion where it was becoming increasingly difficult to man this station with competent help and to operate the same at a profit.

Impelled by that situation, Meyer Hoffman, president of the company, in July 1943, contacted G. F. Dominy, the other defendant herein, who was then operating an oil and gasoline service station known as the Low Price Filling Station in the city of Marion, and talked with him about selling the equipment of The Power Oil Company station to Dominy. Exclusive of the building the removable equipment at that time was worth in excess of $3,000. Dominy stated that he was looking for an additional location, and after some discussion he and Hoffman agreed that Dominy should try out this location with a view to acquiring the same and if after such trial he wanted to continue in the location they would get together on a price of the equipment and see what could be done toward getting an assignment of the lease, or getting a satisfactory lease. There was a complete and full discussion betwen Dominy and Hoffman at the time and there was a determination of the amount of gas and oil that The Power Oil Company had in its tanks and on hand; also the amount of rental that Hoffman was paying and the payment that Dominy would be expected to make to Hoffman during the time he was trying out this station.

The rental that The Power Oil Company was paying was at the rate of $75 per month.

Under the terms of the lease The Power Oil Company was also required to pay the taxes on the premises, which items together amounted to approximately $87 per month.

Under the arrangement made between The Power Oil Company and Dominy, Dominy was to occupy the premises immediately and operate the service station thereon for the purpose above mentioned, and

to reimburse The Power Oil Company at the rate of $87 per month for the rental and tax payments made by it during his trial of the location. No definite time was fixed for the termination of such trial period.

The arrangement made between the parties was wholly oral and did not purport to provide for an assignment of the lease or subletting the premises. Consequently unless the nature of the arrangement was such as in law would constitute an assignment of the lease or a subletting of the premises there was no agreement by the parties concerning either the assignment of the lease or the subletting of the premises.

Dominy immediately occupied the premises, removed the sign of The Power Company therefrom and put up his own sign, Low Price Filling Station, in place thereof, furnished his own products and proceeded to operate the filling station, and has continued in the operation thereof up to this time.

Dominy testified that a few weeks after he commenced the operation of the station he called by telephone Charles W. Fairbanks who was acting as agent for the owners of the premises, and Fairbanks said he had seen the sign out there and knew that it was there. Fairbanks denied having any such conversation with Dominy at the time mentioned. But be that as it may, Fairbanks did not come to the station to see Dominy until sometime in October or November.

When Fairbanks saw Dominy either in October or November Dominy told him that he was trying out this station to see whether he wanted to buy it and that he was paying Hoffman for The Power Oil Company $87 a month, the amount The Power Oil Company paid as rental and the pro-rata payment of taxes. Fairbanks said to Dominy that it was all right for him to continue in possession and raised no objec-

tion to his continuing to make these payments until March 1944. Mr. Dominy is still operating the station at this location, using the equipment of The Power Oil Company but not paying either The Power Oil Company or the owners anything.

On or about December 21, 1943, the plaintiffs notified The Power Oil Company that they were exercising their right under the terms of the lease to recover possession of the premises and terminate the lease without reference to the time the lease would otherwise have expired, for the reason that The Power Oil Company had attempted to assign the lease or underlet the premises without the written consent of lessors, lessors' successors or assigns, and for the further reason that The Power Oil Company had abandoned the premises to another party without the consent of the lessors or their successors, and for the further reason that The Power Oil Company had not paid its rent in accordance with the terms of the lease and was then in default for payment of the same.

About January 4, 1944, Hoffman met with Dominy and it was then agreed between them that Dominy would purchase the equipment owned by the company, at a price of $3,000 in the event Dominy should be able to secure the plaintiffs' consent to the assignment of the lease or a new lease from the owners of the premises. There is a conflict in the testimony of Dominy and Hoffman as to whether the equipment proposed to be sold included the building erected by the lessee on the leased premises, but the preponderance of the evidence is that it did not include such building.

The Power Oil Company paid the rent directly until December 1943, when the check for the rent was refused, and since that time it tendered the amount each month by check until this action was commenced in the Common Pleas Court on February 28, 1944.

The Power Oil Company has also deposited with the clerk of the Common Pleas Court checks for the taxes accruing on the premises since July 1943.

While the taxes were not paid by The Power Oil Company, lessee, as the same became due, it is of no consequence in this action as under the forfeiture clause of the lease above mentioned, lessors do not have any right to recover possession of the premises or terminate the lease for the failure of the lessee to pay the taxes when they became due. Clauses of this character are strictly construed and forfeiture will not be decreed for a cause not specifically covered by the agreement of the parties.

As The Power Oil Company paid the rents provided in the lease, up to the time the plaintiffs refused to accept the same, and has since tendered and paid the amount thereof into court, no forfeiture can be claimed by reason of the nonpayment of the rents, so the sole question presented in this case is whether the arrangement between The Power Oil Company and Dominy as to Dominy occupying the premises and operating a filling station thereon for the purpose aforesaid, as consummated by the parties, constituted in law either an assignment of the lease or a subletting of the premises contrary to the terms of the lease, giving the plaintiffs, under the terms of the lease, the right to recover possession of the premises and to terminate the lease.

The rules of law applicable to such questions are the following:

Restrictions against assignment of leases, being a restraint against alienation, are not looked upon with favor by the courts, and from the earliest times have been construed by courts of law with the utmost jealousy to prevent the restraint from going beyond the express stipulation. 16 Ruling Case Law, 832.

The rule is well settled that an agreement by a lessee with a third person for the permissive use by the latter of the leased premises does not constitute a violation of covenants in a lease against assigning or subletting, but merely amounts to a license to use the property. Note, 89 A. L. R., 1325.

In real property law a license is a permission to do some act or series of acts on the land of the licensor, without having any permanent interest in it; it is founded on personal confidence, and is not assignable. It may be given in writing or by parol; it may be with or without consideration, but in either case it is usually subject to revocation, though constituting a protection to the party acting under it until the revocation takes place. 2 Bouvier's Law Dictionary, Rawle's Third Revision, 1974.

It has also been defined as an authority to do a particular act or series of acts on another's land without possessing any estate therein. 2 Bouvier's Law Dictionary, Rawle's Third Revision, 1974.

The arrangement between The Power Oil Company and Dominy for the occupation and use of the premises by Dominy prescribes a permissive use by the latter of the leased premises for a limited and specific purpose amounting merely to a license to use the property. That being the situation, under the rules above mentioned such arrangement did not and does not constitute a violation of the covenants of the lease against assigning or subletting, authorizing the plaintiffs to terminate the lease, but merely amounts to a license to use the property for the specific purpose.

As there has been no violation of the covenants of the lease warranting the plaintiffs to terminate the same, the decree herein will be for defendants, at the costs of plaintiffs.

*Decree for defendants.*

MIDDLETON, P. J., JACKSON and GUERNSEY, JJ., concur.