WEIR, DIR. OF TRANSPORTATION, APPELLANT, *v.* CONSOLIDATED RAIL CORP. ET AL., APPELLEES.

(No. 45679—Decided August 2, 1983.)

*Mr. Anthony J. Celebrezze, Jr.*, attorney general, and *Mr. Vincent P. Korey*, for appellant.

*Messrs. Weston, Hurd, Fallon, Paisley & Howley* and *Mr. Mark O'Neill*, for appellees.

---

JACKSON, J. This is an appeal from a decision of the probate court, ordering the Ohio Department of Transportation to pay the expenses of the Buckeye Pipeline Co. ("Buckeye") for relocation of its pipeline. The Director of Transportation has appealed, assigning four errors for review.[1]

The state of Ohio is constructing a limited-access highway, called I-480, largely with federal funds. The Director of Transportation has seized, through eminent domain proceedings, several thousand feet of property from the Consolidated Rail Corporation ("Conrail") to use in the construction of I-480. Buckeye maintains a pipeline under the land seized by the director for the transportation of petroleum products. This pipeline was operated under agreements between Buckeye and Conrail signed in 1979 and 1981. In the construction of I-480 it will be necessary to relocate the pipeline. This lawsuit is to determine whether Buckeye or the Ohio Department of Transportation will ultimately pay for the relocation of the pipeline.

This action was initiated by the Director of Transportation against Conrail, Buckeye and other defendants, to appropriate the property in question under the power of eminent domain. Buckeye filed a counterclaim against the department, seeking reimbursement for the cost of moving the pipeline under R.C. 163.51 *et seq.*

---

[1] Appellant's assignments of error are:

"Assignment of Error No. 1:

"The lower court erred in failing to examine 42 USC § 4601 *et seq.* in construing Ohio Revised Code § 163.51 *et seq.* and, in thus erroneously including utility companies within the provisions of R.C. § 163.51 *et seq.*"

"Assignment of Error No. 2:

"The lower court erred in failing to apply the provisions of 23 USC § 123 and related federal regulations as well as in failing to consider Section 8.20 of the provisions of the Ohio Real Estate Administration Policies and Procedural Manual."

"Assignment of Error No. 3:

"The lower court erred in impliedly repealing 23 USC § 123 by failing to examine any judicial rulings construing the same."

"Assignment of Error No. 4:

"The court erred in failing to construe the 1979 pipeline agreement by and between Buckeye Pipe Line (appellee) and Consolidated Rail as being a permit thus rendering appellee ineligible for relocation reimbursement costs."

R.C. 163.53 requires a "state agency" to pay relocation expenses to any "displaced person," whenever the agency acquires real property for a program or project. A "state agency" is defined as any department of the state receiving federal assistance. R.C. 163.51(B). A "person" includes any individual, partnership, corporation, or association. R.C. 163.51(D). A "displaced person" is defined as follows:

" 'Displaced person' means any person who, on or after the effective date of this section, moves from real property, or moves his personal property from real property, as a result of the acquisition of such real property, in whole or in part, or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a state agency with federal financial assistance, or with the rights and powers granted to a community urban redevelopment corporation by the provisions of Chapter 1728 of the Revised Code, or for any state highway project; and solely for the purposes of divisions (A) and (B) of sections 163.53 and 163.56 of the Revised Code, as a result of the acquisition of or the written order of the acquiring agency to vacate other real property, on which such person conducts a business or farm operation, for such program or project." (R.C. 163.51[E].)

R.C. 163.53 is absolute in its terms. It provides for payment of relocation expenses to "any" displaced person:

"(A) Whenever the acquisition of real property for a program or project undertaken by a state agency will result in the displacement of any person on or after the effective date of sections 163.51 to 163.62, inclusive, of the Revised Code, the head of such agency shall make a payment to any displaced person, upon proper application as approved by such agency head, for:

"(1) Actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;

"(2) Actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the head of the agency;

"(3) Actual reasonable expenses in searching for a replacement business or farm."

However, the statute does not specify whether a "displaced person" must have had an interest in the real property acquired by the state agency.

Appellant Director of Transportation essentially contends that appellee Buckeye is not a "displaced person" within the meaning of R.C. 163.51 et seq. because it is a utility, and because it has only a license, not an easement, to use the property in question for its pipeline. Appellant cites in support of his position cases interpreting analogous federal statutes, and cases setting forth the common law of Ohio. There has been cited no case on point interpreting the applicable Ohio statutes, R.C. 163.51 et seq.

A

Common Law of Ohio

There is no rule at common law which deprives utilities of compensation in appropriation cases. It was the established law that persons would be compensated only where an interest in real property was taken. See, e.g., Masheter v. Boehm (1974), 37 Ohio St. 2d 68 [66 O.O.3d 183], wherein the Supreme Court noted that compensation could be granted for fixtures, which had lost their character as personal property and were considered part of the realty, but held that not all business equipment is a fixture.

Where the real property of a utility is seized by the state for a public purpose, compensation is payable to the utility. For example, in the case of Green v. Noble (1961), 114 Ohio App. 321 [19 O.O.2d 318], it was held that the Director of Highways was without authority to cut off a county-

owned water line located in a county road, for the construction of a freeway, except by purchase, gift, agreement, or condemnation.

Water lines laid under state highways, pursuant to a permit or franchise from the state, however, may be removed and relocated by the Director of Highways, at the cost of the owner. *Green* v. *Noble, supra.* This principle is covered by statute in Ohio, at R.C. 5515.02.[2]

Provisions of R.C. 5515.02 are not applicable to the case at bar because the appellee's pipeline is located on private property, not the property of the state.

It is settled that an easement is an interest in real property, whereas a license is not. See *Ohio Valley Advertising Corp.* v. *Linzell* (1958), 168 Ohio St. 259 [6 O.O.2d 420]. There are several distinguishing characteristics between an easement and a license: a license is terminable at the will of the licensor, an easement is not; a license cannot be assigned, and does not pass at death; a license terminates upon conveyance of the land; a license is an agreement, binding only on

---

[2] R.C. 5515.02 provides:

"All individuals, firms, and corporations using or occupying any part of a road or highway on the state highway system, or the bridges or culverts thereon, with telegraph or telephone lines, steam, electrical, or industrial railways, oil, gas, water, or other pipes, mains, conduits, or any object or structure, other than by virtue of a franchise or permit granted and in force, shall remove from the bounds of such road, highway, bridge, or culvert, their poles and wires connected therewith, and any tracks, switches, spurs, or oil, gas, water, or other pipes, mains, conduits, or other objects or structures, when in the opinion of the director of transportation they constitute obstructions in such roads, highways, bridges, or culverts, or interfere or may interfere with the contemplated construction, reconstruction, improvement, maintenance, or repair of such roads, highways, bridges, or culverts thereon, or interfere or may interfere with the use of such roads, highways, bridges, or culverts thereon, by the traveling public.

"All individuals, firms, or corporations so occupying any road or highway on the state highway system, or the bridges or culverts thereon, under and by virtue of a franchise or permit granted and in force shall relocate their properties and all parts thereof within the bounds of such road, highway, bridge, or culvert when in the opinion of the director they constitute obstructions in any such road, highway, bridge, or culvert, or interfere with or may interfere with the contemplated construction, reconstruction, improvement, maintenance, or repair of such road, highway, bridge, or culvert, or interfere with or may interfere with the use of such road, highway, bridge, or culvert, which relocation within the bounds of such road, highway, bridge, or culvert shall be in the manner and to the extent prescribed by the director.

"If, in the opinion of the director, such individuals, firms, or corporations have obstructed any road or highway on the state highway system, or the bridges or culverts thereon, or if any of their properties, in his opinion, are so located that they do or may interfere with the contemplated construction, reconstruction, improvement, maintenance, or repair of such road, highway, bridge, or culvert, or if, in his opinion, they interfere with or may interfere with the use of such road, highway, bridge, or culvert by the traveling public, said director shall notify such individual, firm, or corporation directing the removal of such obstruction or properties, or the relocation of such properties, and, if such individual, firm, or corporation does not within five days from the service of such notice proceed to remove or relocate the same and complete the removal or relocation within a reasonable time, the director may remove or relocate the same by employing the necessary labor, tools, and equipment. The costs and expenses shall, in the first instance, be paid by the director out of any appropriation of the department of transportation available for the establishment, construction, reconstruction, improvement, maintenance, or repair of highways, and the amount thereof shall be certified to the attorney general for collection by civil action. Said notice shall be served by the sheriff in the [same] manner as summons in civil actions."

the parties to it; an easement is an interest in real property which runs with the land. *Rex* v. *Hartman* (App. 1934), 16 Ohio Law Abs. 573; *Wolfrum* v. *Hartman* (1933), 45 Ohio App. 172; *Fowler* v. *Delaplain* (1909), 79 Ohio St. 279; *Fairbanks* v. *Power Oil Co.* (1945), 81 Ohio App. 116 [36 O.O. 418]; *Yeager* v. *Tuning* (1908), 79 Ohio St. 121.

Appellant contends that the agreements between Buckeye and Conrail, for maintenance of the pipeline under the side roadbed of the railroad, constituted a mere license, and not an easement.

The original agreement, between Buckeye and the New York Central RR. Co., was terminable by the railroad upon thirty days' notice. Rent was payable annually. It was, by its terms, a license.

In 1979, Buckeye and Conrail executed a new agreement, in the form of a grant, for which Buckeye paid $59,000. This agreement was not terminable by the railroad. It was expressly binding upon the successors and assigns of the railroad, but Buckeye could assign the agreement only with permission of Conrail. Buckeye was obligated to relocate the pipeline if the railroad deemed it necessary for changes in grade, changes in alignment, or other improvements "directly related to railroad transportation service." The railroad was obligated to provide Buckeye with land in which to relocate the pipeline, "if available."

In 1981, a new agreement between Conrail and Buckeye was executed, which expressly incorporated all the terms and conditions of the 1979 agreement. The only change effected in 1981 was that the agreement was denominated a grant of an "easement."

On balance, the agreement between Conrail and Buckeye has more attributes of an easement than of a license. Although it is not assignable by Buckeye, it runs with the land. It is in the form of a grant, for which one lump sum payment was made. It is not terminable at the will of the railroad.

There is one significant condition attached to the grant: that is, if the land is required for railroad transportation purposes, the pipeline must be relocated to other land on Conrail's premises, if available. If none is available, then the easement ceases as to that portion of the land.

We construe the 1979 agreement to have created an easement, defeasible upon the happening of certain conditions. Consequently, we conclude that Buckeye owns a compensable interest in the property appropriated by the state, whether pursuant to the common law of Ohio or its appropriation statutes.

### B
### Relocation Statutes, Federal and State

The previous compensation system was altered by the passage of R.C. 163.51 *et seq.* Under prior law, the state was not required to pay for the relocation of personal property from realty when the realty was appropriated.

By their terms, R.C. 163.51 *et seq.* do not affect the rights of parties in eminent domain actions:

"(A) Section 163.59 of the Revised Code creates no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation.

"(B) Nothing in sections 163.51 to 163.62, inclusive, of the Revised Code, shall be construed as creating in any condemnation proceeding brought under the power of eminent domain, any element of value or damage not in existence immediately prior to the effective date of such sections." (R.C. 163.52.)

These provisions were not intended to render the statutes nugatory, however. They have been interpreted as meaning that the right to relocation expenses is not an element of a claim for compensation in an eminent domain case, but states a separate cause of action. This was the court's holding in *Barr* v. *State* (Ct. of Claims 1975), 73 O.O.2d 111, 115:

"Under R.C. § 163.58, displaced persons must make application for benefits,

and having done so shall be 'paid promptly after a move, or in hardship cases, be paid in advance.' R.C. § 163.58(3) also provides that any person aggrieved by any determination of an agency may have his application reviewed by the head of the state agency having authority over the applicable program or project.

"If there is a claim for relief predicated upon the provisions in the sections reviewed, it is not alleged in the complaint filed in this court. Displacement payments are not a part of an appropriation action, nor is the question of such being due and payable at issue in the instant case. The specific statutes provide the necessary procedures for recovery."

The state relocation payments statute was enacted pursuant to federal mandate. Congress enacted a nearly identical federal act requiring federal agencies to pay relocation expenses of persons displaced by federal projects. (Section 4601 et seq., Title 42, U.S. Code.) It also provided that the states must enact similar statutes in order to qualify for federal aid. (Sections 4621 and 4630, Title 42, U.S. Code.)

There is a split in federal decisions as to whether the federal relocation assistance statute requires payment of relocation expenses to utilities which have a mere permit, franchise, or license on the property taken. In Consumers Power Co. v. Costle (C.A. 6, 1980), 615 F. 2d 1147, the Sixth Circuit Court of Appeals held that a power company seeking payment for relocation expenses of its gas mains was not a "displaced person," because it did not have a property right. In Chesapeake & Potomac Tel. Co. of Virginia v. Landrieu (C.A. 4, 1982), 674 F. 2d 298, the Fourth Circuit Court of Appeals found that a telephone company was entitled to compensation for moving its poles, lines, and cables, even though the items were maintained under a franchise agreement revocable by the city of Norfolk.

There is also a split among state courts interpreting state relocation assistance statutes. The Delaware Supreme Court has indicated in obiter dictum that a public water utility could have recovered under the Delaware relocation statute, except for the fact that the statute did not apply because the project was not funded ninety percent by the federal government. Artesian Water Co. v. State Dept. of Highways (Del. 1974), 330 A. 2d 441. The Virginia Supreme Court held, however, that a utility which maintained facilities under permits from governmental agencies on public land was not entitled to relocation assistance. Potomac Electric Power Co. v. Fugate (1971), 211 Va. 745, 180 S.E. 2d 657.

In the case at bar, the trial court found that the right to compensation under R.C. 163.51 is unrelated to the right to compensation in an eminent domain case, and that it was immaterial whether the appellee had an easement or a license on Conrail's land. The trial court held that the only restriction on the right of displaced persons to recover relocation expenses was that their occupancy of the land must be lawful.

The relocation assistance statute cannot reasonably be interpreted to require payment of relocation expenses to persons who occupy premises solely upon the sufferance of the present owner, and who are without any lawful interest in the property. Persons whose occupancy is terminable upon the will of the owner or upon conveyance of the property, that is, licensees, are subject to displacement at any time.

Statutes which are in derogation of the common law are strictly construed. Sabol v. Pekoc (1947), 148 Ohio St. 545, 552 [36 O.O. 182]. R.C. 163.51 is ambiguous in that it defines a "displaced person" as any person who moves from real property as a result of the acquisition of real property by a state agency. This court may presume that the state did not intend to provide relocation payments to trespassers, although such persons come within the literal definition of the statute.

It also may be presumed that the statute was intended to recompense persons with a real property interest. The statute is silent as to licensees. Since to recompense licensees would be in derogation of the common law, we interpret R.C. 163.51 as pertaining solely to persons with a lawful interest in the real property acquired.

Accordingly, since the appellee is deemed to have an interest in the property taken by the Department of Transportation, it is a "displaced person" within the meaning of R.C. 163.51(D), and is entitled to relocation compensation under R.C. 163.53.

The appellant's reliance upon Section 123, Title 23, U.S. Code, and the District of Columbia Public Utilities Reimbursement Act, is also misplaced.

Section 123, Title 23, U.S. Code governs federal payments to states for highway projects. It forbids federal support for payments to utilities when the payment violates state law or violates a contract between the state and the utility.

In the case at bar, this court is required to determine the law of Ohio on the issue of whether a utility company can qualify as a "displaced person" for the purpose of requiring the state to pay relocation expenses. Our decision is not in conflict with Section 123.

Congress also enacted the Public Utilities Reimbursement Act for the District of Columbia. This act specifies that utilities may be compensated for relocation costs caused by urban redevelopment projects. A similar law exists in Ohio, requiring municipal corporations to pay for the relocation of utilities in urban renewal projects:

"If such municipal corporation, or its duly authorized agency, determines that the retention of such property in such location will interfere with the consummation of the project, it shall make an order requiring the public utility using such property to remove, relocate, rearrange, or change such property in accordance with such order, and the cost and expense of such removal, rearrangement, or change, including the cost of installing such property in a new location or locations or changed condition, and the cost of any lands or any rights or interest in lands and any other rights acquired to accomplish such removal, relocation, rearrangement, or change shall be paid by the municipal corporation or its duly authorized agency as part of the cost of making land available for use by a community urban redevelopment corporation. In case of the relocation of any such property, the public utility using the same, its successors and assigns, may maintain and operate such property with the necessary appurtenances, in the new locations for as long a period and upon the same terms and conditions and with the same franchise rights as it had the right to maintain and operate such property in its former location." (R.C. 1728.13[D].)

Appellant argues that if highway projects were subject to the same rule, that similar laws would have been enacted.

In fact, R.C. 163.51 includes urban redevelopment projects by its terms. "State agency" is defined as follows:

" 'State agency' means any department, agency, or instrumentality, of the state or a political subdivision, receiving federal financial assistance or any community urban redevelopment corporation organized pursuant to the provisions of Chapter 1728. of the Revised Code." (R.C. 163.51[B].)

There is no conflict between R.C. Chapters 1728 and 163. The only difference is that R.C. 163.51 prescribes payment of relocation expenses to all displaced persons, whereas R.C. 1728.13 (D) refers only to utilities.

The appellant's assignments of error are not well-taken. Accordingly, the decision of the probate court is affirmed.

*Judgment affirmed.*

PATTON, C.J., and NAHRA, J., concur.