## CLEVELAND ELECTRIC ILLUMINATING COMPANY

v.

## CONTINENTAL EXPRESS et al.

Court of Common Pleas of Ohio,
Cuyahoga County.

No. CV–371615.

Decided Aug. 5, 1999.

*Wegman, Hessler, Vanderburg & O'Toole, David M. Leneghan* and *Garin C. Hoover,* for plaintiff.

*Elsass, Wallace, Evans, Schnelle & Co., L.P.A.,* and *Richard H. Wallace,* for defendant.

---

José A. Villanueva, Judge.

## I. BACKGROUND

This matter is before the court on the motion of defendants Continental Express and Vito Bonventre to dismiss or alternately for summary judgment. For the reasons set forth more fully below, defendants' motion is denied.

On December 10, 1883, the city of Cleveland granted plaintiff CEI's predecessor, the Cleveland Electric Company, "permission to erect poles in streets, alleys and public grounds of the city of Cleveland, and to connect the same with wires for the purpose of furnishing power and light by means of electricity." The state of Ohio granted the Cleveland Electric Company the right to occupy the streets for the purpose of erecting electrical transmission equipment on January 26, 1887. 84 Ohio Laws 7.

In 1913, plaintiff installed a utility pole at 2614 East 37th Street in Cleveland for the purpose of transmitting electricity. This utility pole supported overhead wires as well as cables that were attached to underground electrical facilities. Plaintiff intended that this electrical transmission equipment be permanently affixed to the right of way, although it expected that the pole would need to be replaced at the end of its useful life, which is 40 to 50 years. In 1995, plaintiff placed a new utility pole in the right of way situated at 2614 East 37th Street.

On October 8, 1996, plaintiff's utility pole was struck by a semi-trailer truck owned by defendant Continental and driven by its employee, Vito Bonventre. The utility pole and the attached equipment were damaged in the accident.

Plaintiff filed a complaint for damage to its utility pole on December 9, 1998, more than two years after the date on which the damage occurred. Defendants filed a motion to dismiss or, alternately, for summary judgment, arguing that plaintiff filed its complaint after the statute of limitations had run. No other grounds for dismissal or for summary judgment were offered.

The question before this court is whether plaintiff's action is an action for damage to personal property, which is subject to the two-year statute of limitations prescribed by R.C. 2305.10, or whether the action is for trespassing upon real property, which is subject to the four-year statute of limitations prescribed by R.C. 2305.09. The resolution of this issue depends on whether the utility pole constitutes a fixture or whether the utility pole is merely plaintiff's personal property.

## II. *DISCUSSION*

The Ohio Supreme Court has defined the term fixture as "an article which was a chattel, but which by being physically annexed or affixed to the realty, became accessory to it and part and parcel of it." *Teaff v. Hewitt* (1853), 1 Ohio St. 511, 527, 1853 WL 54. The *Teaff* court held that the following criteria should be used for determining whether an item of property is a fixture:

"1st. Actual annexation to the realty, or something appurtenant thereto.

"2d. Appropriation to the use or purpose of that part of the realty with which it is connected.

"3d. The intention of the party making the annexation, to make the article a permanent accession to the freehold—this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made." *Id.* at 530.

 In this case the evidence establishes that the utility pole and the attached equipment were annexed to the real property upon which the pole was situated, that the annexation was adaptable to the use of the real property, and that plaintiff intended that the annexation be permanent. Therefore, the utility pole and the attached equipment were a fixture and are considered by this court to be real property for the purpose of R.C. 2305.09 analysis.

A. Annexation to Real Property.

The *Teaff* court found that the machinery in a woolen factory, including various machines connected to a steam engine, were not fixtures since the machines were not attached to the building in which they were housed, except by cleats, and since the machines were subject to removal at the convenience of the owner of the factory. In order for personal property to be deemed a fixture, *Teaff* court required an actual and substantial physical attachment. Since *Teaff*, however, Ohio courts have been more liberal in their views of what constitutes annexation, going so far as to hold that a slight attachment will suffice if the other two criteria are met. *Holland Furnace Co. v. Trumbull Savings* (1939), 135 Ohio St. 48, 13 O.O. 325, 19 N.E.2d 273; see, also *Masheter v. Boehm* (1973), 34 Ohio App.2d 43, 63 O.O.2d 96, 295 N.E.2d 917, reversed on other grounds, 37 Ohio St.2d 68, 66 O.O.2d 183, 307 N.E.2d 533. In fact, in the case of *Masheter*, the court suggested that an item may become a fixture merely by virtue of its own weight. *Id.* at 47–49, 63 O.O.2d at 98–100, 295 N.E.2d at 920–921.

In this case, the utility pole is annexed to the land. The uncontroverted evidence is that the pole was inserted in a hole in the ground that was at least eight feet deep. It was secured there and it could not be easily removed. This is

sufficient to qualify as annexation to the real property for the purpose of determining whether the pole was a fixture under the liberal standard adopted by the Supreme Court in *Holland Furnace*.

## B. Appropriation to use of realty.

In *Zangerle v. Standard Oil Co. of Ohio* (1945), 144 Ohio St. 506, 30 O.O. 151, 60 N.E.2d 52, the Ohio Supreme Court applied the *Teaff* test to a dispute over whether the machinery and equipment of an oil refinery could be deemed real property for tax purposes. The court held that the machinery and equipment was personal property after finding that the machinery and equipment, though beneficial to the business situated on the real property, provided little or no benefit to the real property itself.

The *Zangerle* court focused on the second of the *Teaff* criteria, reasoning that the measure of whether the chattel had been appropriated to the use or purpose of that part of the realty to which it is connected is "whether the chattel under consideration * * * is devoted primarily to the business conducted on the premises, or whether it is devoted primarily to the use of the land upon which the business is conducted." *Id.* at 516, 30 O.O. at 155, 60 N.E.2d at 57. The court explained that "the annexed chattel must have such relationship to the land or improvements already constructed thereon as to be necessary or beneficial to its enjoyment, independent of the business presently carried on." *Id.* at 515, 30 O.O. at 155, 60 N.E.2d at 56.

The same result was reached in the case of *Zangerle v. Republic Steel Corp.* (1945), 144 Ohio St. 529, 30 O.O. 160, 60 N.E.2d 170. The Ohio Supreme Court affirmed the ruling of the Board of Tax Appeals that steel processing machinery and equipment located in defendant's plant was personal property, rather than real property, stating in paragraph eight of the syllabus that "[t]he business of manufacturing is a pursuit personal in its character and not strictly subservient to real estate or essential to the enjoyment of the freehold or inheritance in land." [1]

---

1. The Supreme Court explained:

"The general principle to be kept in view in determining whether what once was a chattel has become a fixture is the distinction between the business which is carried on in or upon the premises, and the premises. The former is personal in its nature, and articles that are merely accessory to the business, and have been put on the premises for this purpose, and not as accessions to the real estate, retain the personal character of the principal to which they belong and are subservient. But articles which have been annexed to the premises as accessory to it, whatever business may be carried on upon it, and not peculiarly for the benefit of a present business which may be of a temporary duration, become subservient to the realty and acquire and retain its legal character." *Id.* at paragraph seven of the syllabus.

Based on the *Teaff* decision and the *Zangerle* decisions, Ohio courts have regarded as personal property a variety of items used for manufacturing and transportation, including stone piers and bridge abutments constructed by a railroad company on its easement, *Wagner v. Cleveland & Toledo Railroad Co.* (1872), 22 Ohio St. 563, 1872 WL 42; kilns anchored to concrete slabs, *Roseville Pottery, Inc. v. County Board of Revision* (1948), 149 Ohio St. 89, 36 O.O. 440, 77 N.E.2d 608; a basic oxygen furnace used for the manufacture of steel, *Wheeling–Pittsburgh Steel Corp. v. Bd. of Revision* (1971), 27 Ohio St.2d 45, 56 O.O.2d 25, 271 N.E.2d 861; the caging system of an egg production facility, *Pine Creek Farms v. Hershey Equipment* (July 7, 1997), Scioto App. No. 96CA2458, unreported, 1997 WL 392767; a hydraulic boat lift that rests on the floor of a harbor channel, *Harbor Island Assn. v. Kaiser* (June 3, 1994), Ottawa App. No. 93OT022, unreported, 1994 WL 240289, and a radio transmission tower, *Arcey Broadcasting, Inc. v. Limbach* (April 10, 1989), Stark App. No. CA–7578, unreported, 1989 WL 35039. In each case, the court found that the item in question was an accessory to the business, rather than an accessory to the real property.

However, the courts have taken a different view of machinery and equipment that serve a more general purpose, such as motive-power, water, drainage and sewer equipment, and utilities, since such equipment improves or benefits the real property as well as the business that is situated on the real property. The distinction has its roots in *Teaff,* but became more pronounced after *Zangerle v. Standard Oil,* in which the Supreme Court noted that the following items found at the Standard Oil refinery were real property:

"Buildings, including built-in heating, ventilating, plumbing, sprinkling, lighting, sanitary and drinking water systems; foundations for all units; brick and concrete stacks and chimneys; embankments and fills; fire banks and fire walls; retaining walls and other brick and concrete walls; paving and driveways; bridges and tunnels; railroad tracks, switches and trestles; fences; pits; cisterns, culverts, masonry, underground flues and water wells; drain, sewers and plumbing; and other such like property permanently attached to the land." 144 Ohio St. at 508–509, 30 O.O. at 152, 60 N.E.2d at 54.

The court reasoned that these items, unlike the special purpose machinery and equipment in question, might be of benefit to a subsequent occupier of the land, even if the subsequent occupier was not involved in the business of oil refining.

In *Emch v. Lindley* (Oct. 18, 1985), Sandusky App. No. S–85–6, 1985 WL 8199, the Sixth District Court of Appeals held that drainage tubing installed on a parcel of real property used for agriculture was real property since it constituted an improvement on the land. The court quoted *Zangerle v. Standard Oil,* wherein the Supreme Court explained:

" 'For the purpose of classification of annexed property as realty or personalty, the Ohio cases, herein cited, have clearly drawn a fundamental distinction between annexations which would be integrated with and of permanent benefit to the land regardless of its future use, such as a hearing furnace, motive-power machinery, water systems, drainage and sewer systems, accessory to the land and not to the business carried on; and annexations of special-purpose, manufacturing or processing machinery and structures which could be used only in a particular business or industry and not in any normal use to which the land might be devoted, and hence accessory to the business in which they function and not accessory to land.' " 144 Ohio St. at 515–516, 30 O.O. at 155, 60 N.E.2d at 57.

The court concluded that the drainage tubing permanently benefitted the real property, regardless of the nature of the business conducted thereon and that the tubing was, therefore, realty under the *Zangerle* test.

The Fourth District Court of Appeals reached a similar conclusion in *Matthew v. City Ice & Fuel Co.* (Aug. 18, 1982), Gallia App. No. 81 CA 6, 1982 WL 3516. In *Matthew,* the defendant caused fuel oil to spill and contaminate the cistern and water system affixed to plaintiff's real estate. Citing *Teaff* and *Zangerle v. Standard Oil,* the court held that "given the nature of a cistern and related water system and its attachment to the real estate, * * * such items were fixtures to the real estate and not personal property." *Id.*

A number of appellate decisions discuss the question of whether utility equipment is a fixture or personal property for the purposes of eminent domain analysis. The weight of opinion supports the conclusion that utility equipment is a fixture for eminent domain purposes. In *Green v. Noble* (1961), 114 Ohio App. 321, 19 O.O.2d 318, 182 N.E.2d 569, the court held that a water service company who leased a waterline and right of way from the county possessed a sufficient interest in the realty on which the right of way is situated to require compensation in an eminent domain proceeding. The *Green* court explained:

"Where a county-owned water line leased to a water service company is located within a county road right of way, the county, by reason of ownership of the road right of way as well as the water line, and the water service company, as lessee, have property rights therein which can be extinguished by the Director of Highways only by purchase, gift, agreement or condemnation." *Id.* at 321, 19 O.O.2d at 318–319, 182 N.E.2d at 571.

In *Weir v. Consolidated Rail Corp.* (1983), 12 Ohio App.3d 63, 12 OBR 204, 465 N.E.2d 1341, the court held that a pipeline company that had an easement under a railroad right of way was entitled to relocation expenses as a result of highway construction. The *Weir* court explained that "compensation could be granted for fixtures, which had lost their character as personal property and were considered part of the realty." *Id.* at 64, 12 OBR at 206, 465 N.E.2d at 1344.

The Third District Court of Appeals held in *Paulding Cty. v. Ohio Power* (Apr. 28, 1989), Paulding App. No. 11–86–4, unreported, 1989 WL 43026, that an electric utility company was entitled to compensation for the relocation of its utility poles, which were affixed to an easement owned by the company. The court reasoned that " 'a utility company which has acquired an easement or similar interest for its facilities or lines, as in or abutting a public way, is entitled to compensation where it is required, in connection with the exercise of eminent domain, to remove or relocate its equipment.' " *Id.*, quoting 29A Corpus Juris Secundum (1965), Eminent Domain, Section 105(1).

Although there are apparently no appellate cases precisely on point, several trial courts have recently ruled that electrical utility poles attached to easements are fixtures for the purpose of R.C. 2305.09 analysis.[2] The reasoning employed by the courts in these cases is consistent with the reasoning set forth in *Green* and *Weir*.

In this case, the pole and the electrical transmission equipment attached thereto serve the right of way that plaintiff owns for the purpose of maintaining electrical transmission equipment. This is sufficient to meet the criterion that the item is appropriated to the use or purpose of the realty to which it is connected. This conclusion is consistent with the holdings in *Green* and *Weir*, where the utility companies were entitled to compensation for the cost of relocating utility benefits plaintiff, a utility company in the business of transmitting electrical energy. However, it also benefits the realty to which it is attached, inasmuch as it makes electrical power available to the real property and to the

---

**2.** In *Ohio Edison v. Domany* (1982), Akron M.C. No. 82 CVP 3031, defendant allegedly damaged a utility pole maintained by plaintiff Ohio Edison. Plaintiff filed suit more than two years after the damage occurred and defendant moved for summary judgment, arguing that the statute of limitations had run. The trial court disagreed, ruling that "utility poles owned by plaintiff and permanently affixed in their easement for distribution of power become real property and as such, fall under the four-year statute of limitations of (sic) damage to real estate."

Under similar circumstances, the Summit County Court of Common Pleas reached the same conclusion in the case of *Ohio Edison v. Ruhlin Construction* (May 30, 1996), Summit County Court of Common Pleas No. 95 10 3545. The trial court in *Ruhlin* noted that for the sake of eminent domain analysis, a utility line in a city-owned street is a fixture, citing *Green* and *Weir*. The *Ruhlin* court reasoned that if the utility equipment in *Green* and *Weir* was real property rather than personal property, so too must the utility pole in *Ruhlin* be real property.

In *Ohio Edison v. GTE* (Oct. 30, 1995), the Ashland Municipal Court held that an electric utility pole affixed to an electric company's easement is realty. The court explained: "The very nature of an easement interest in real estate is the right to use the property owned by someone else. It is an interest in realty. Although an unused easement is merely an encumbrance to the realty, its very purpose and value is for the use by the owner of the easement for the benefit of the easement interest. It cannot be argued that putting the easement to use by placing the fixtures thereon does not improve the land (i.e. the easement interest thereto). Accordingly, such use benefits the real property easement interest without which the easement interest would be useless."

neighboring parcels. In this way, the utility pole and the attached equipment are more akin to the drainage tubing in *Emch* and the cistern and water system in *Matthew* than to the heavy machinery at question in the *Zangerle* cases. The availability of utilities such as electric, gas, and water undoubtedly enhance the value of real property, regardless of the activity that might be conducted on the real property in the future.

C. Intention to Make Annexation Permanent.

In *Teaff*, the Supreme Court explained that the intent of the party making the annexation may be inferred from the nature of the article affixed, the relation and situation of the party, the mode of annexation and the purpose for which the annexation was made. 1 Ohio St. at 530.

While permanence is one characteristic of a fixture, the term "permanent accession" should not be construed too strictly. Things fall apart. The Eighth District Court of Appeals recognized this in the case of *Masheter v. Boehm*, 34 Ohio App.2d 43, 48, 63 O.O.2d 96, 99, 295 N.E.2d 917, 920, where it explained "[a] machine is not less a fixture because, having a limited life, it may have to be eventually replaced, or substantially overhauled."

In this case, plaintiff is an electrical power company. It owns a right of way on city property for the installation and maintenance of electrical transmission equipment. The equipment consists of wires and other equipment attached to poles. The poles are driven eight feet into the ground, where plaintiff intends that they remain indefinitely. The utility pole in question in this case was installed in 1995 and is expected to remain in place until its useful life ends in 40 or 50 years. This fact does not undermine plaintiff's position that the utility pole and the attached equipment are permanently affixed. See *Masheter v. Boehm*, 34 Ohio App.2d at 48, 63 O.O.2d at 99, 295 N.E.2d at 920–921. It is apparent from the uncontroverted evidence that plaintiff intended that the utility pole be a permanent accession to the realty.

III. *CONCLUSION*

■ Plaintiff's utility pole and the attached electrical equipment are fixtures. Thus, plaintiff's complaint was required to be filed within the four-year statutory period prescribed by R.C. 2305.09, which relates to trespassing upon real property. Plaintiff timely filed its complaint within four years of the date upon which defendants damaged the fixture. Therefore, defendants' motion to dismiss or alternately for summary judgment is denied.

IT IS SO ORDERED.

*Motion denied.*