BIANCO, J.T.C.
This is the court’s decision with regard to the motion of Plaintiff Mobil Oil Corporation (herein “Mobil”) seeking a declaratory-judgment challenging the constitutionality of a portion of the Business Retention Act (herein the “Act”), L. 1992, c. 24, codified in the first paragraph of N.J.S.A. 54:4-1. This case specifically concerns the assessment of Mobil’s petroleum refineries made by Defendant Township of Greenwich (herein “Greenwich”) and whether the treatment by Greenwich’s assessor of certain machinery and equipment located on Mobil’s property was constitutional.
It is necessary to recount the history regarding this matter prior to delving into the crux of the issues. In 1993, Greenwich underwent a district wide revaluation establishing the assessment on the refinery at $344,208,300. Mobil appealed that assessment and all subsequent assessments. Mobil and Greenwich ultimately settled the 1993 through 1997 tax cases reducing the assessments as follows:
Year Original Settlement
Assessment Assessment
1993 $344,208,300 $174,000,000
1994 $344,208,300 $180,000,000
1995 $344,208,300 $195,000,000
1996 $344,208,300 $215,000,000
1997 $344,208,300 $218,000,000
In September of 1998, Mobil sold the subject property to Valero Refining Co. for a stated purchase price for all assets (exclusive of inventories and working capital) of $228,000,000. For tax year 1998, the assessor for Greenwich bifurcated the property assessment on the subject property (Block 900, Lot 2) by establishing a real property and personal property assessment. This bifurcated assessment (which had not applied in prior years) was utilized pursuant to the amendment of N.J.S.A. 54:4-1 by way of the Act.[1] *7 Prior to 1998, the assessment on the subject property included all process equipment (referred to by the assessor as “processed realty”). The new assessment, for the tax year 1998, is broken down as follows:
Real Property: $210,143,500
Processed Realty: $294,818,869
Total: $504,962,369
This new assessment generated a new tax liability of $6,279,641.91.
Mobil asserts that the Act in amending N.J.S.A. 54:4-1 (see discussion infra under section I of this opinion), and its characterization of what machinery and equipment of a petroleum refinery constitutes for local property tax purposes, violates Article VIII, § 1, ¶ 1 of the New Jersey Constitution (the Uniformity Provision). Mobil challenges the constitutionality of the Act by examining the recent practices of other tax assessors in New Jersey, where petroleum refineries also exist. Mobil contends that there has been no real attempt by these tax assessors to examine the refinery machinery and equipment in light of the three part test of N.J.S.A. 54:4-l(a).[2]
Mobil also asserts that the Act is a revenue raising measure that originated in the Senate, and as such, violates the constitutional provision requiring bills for raising revenue to originate in the General Assembly. N.J. Const. (1947), Art. IV, § VI, ¶ 1. Lastly, Mobil asserts that the Act, as applied, constitutes impermissible special legislation. Mobil filed papers involving a supple *8 mental argument involving an analysis of N.J.S.A. 54:4-2.45 on May 27,1999, and this court will address this argument in part III of its decision.

I. Background to the Classification of Real and Personal Property

Historically, both real and personal property were subject to local taxation in New Jersey. History lends support to the proposition that the Legislature has broad discretion “in the classification of personal property for exemption or preferential treatment.” Switz v. Kingsley, 37 N.J. 566, 586,182 A.2d 841, 851 (1962). The Uniformity Clause requires that all real property be “assessed and taxed ... according to the same standard of value ... [and] at the general tax rate of the taxing district in which the property is situated____” N.J. Const., Art. VIII, § 1, ¶ 1(a).
Prior to 1992, N.J.S.A. 54:4-1 provided:
Personal property taxable under this chapter shall include only the tangible goods and chattels, exclusive of inventories, used in business of local exchange telephone, telegraph and messenger systems, companies, corporations or associations subject to lax under P.L. 1940, c. 4 (C. 54:30A-16 et seq.) as amended, and shall not include any intangible personal property whatsoever whether or not such personalty is evidenced by a tangible or intangible chose in action, except as otherwise provided by section 54:4-20 hereof.
N.J.S.A. 54:4-1 was amended to provide, in pertinent part:
Personal property taxable under this chapter shall include, however, oixly the machinery, apparatus or equipment of a petroleum refinery that is directly used to manufacture petroleum products from crude oil in any of the series of petroleum refining pi'ocesses commencing with the introduction of crude oil and ending -with refined petroleum products, but shall exclude items of machinery, apparatus or equipment which are located on the grounds of a petroleum refinery but which are not directly used to refine crude oil into petroleum products and the tangible goods and chattels, exclusive of inventories, used in business of local exchange telephone, telegraph and messenger systems, companies, corporations or associations ... Real property taxable under this chapter means all land and improvements thereon and includes personal property affixed to the real property or an appurtenance thereto, unless:
a. (1) The personal property so affixed can be removed or severed without material injury to the real property; (2) The personal property so affixed can be removed or severed without material injury to the personal property itself; and (3) The personal property so affixed is not ordinarily intended to be affixed permanently to real property; or
*9 b. The personal property so affixed is machinery, apparatus, or equipment used or held for use in business and is neither a structure nor machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property. B’or purposes of this subsection, real property shall include pipe racks, and piping and electrical wiring up to the point of connections with the machinery, apparatus, or equipment of a production process as defined in this section.
Mobil contends that prior to the enactment of the Act itself, refineries were viewed and taxed as real property. Consequently, pursuant to the Act’s reclassification of certain refinery “property”, property that was once assessed and taxed as real property will now be assessed and taxed as personal property resulting in a substantial increase in Mobil’s tax liability. Mobil asserts that the Act’s provision for the taxation of the “machinery, apparatus, or equipment” of petroleum refineries is a reclassification forbidden by the Uniformity Clause of the New Jersey Constitution. See N.J. Const. (1947), Art. 8, § 1, ¶ 8.

II. Standard of Review

“As with all legislation, the [Act] proceeds with a presumption of constitutionality.” General Motors v. Linden, 150 N.J. 522, 532, 696 A.2d 683, 688 (1997). A court will invalidate a statute only if it is clearly repugnant to the Constitution. Ibid.; Newark Superior Officers Ass’n v. City of Newark, 98 N.J. 212, 486 A.2d 305 (1985); Paul Kimball Hosp., Inc. v. Brick Township Hosp., 86 N.J. 429, 432 A.2d 36 (1981); See also Mahwah Tp. v. Bergen County Board of Taxation, 98 N.J. 268, 486 A.2d 818 (1985) (an act of the Legislature is presumed to be constitutional and will not be declared void unless it is clearly repugnant to the Constitution). Furthermore, if a statute is capable of being viewed in more than one way, a court must view the statute in the manner that sustains its constitutionality and must strain to uphold the statute. See Thomas v. Kingsley, 43 N.J. 524, 206 A.2d 161 (1965); State v. Mortimer, 135 N.J. 517, 641 A.2d 257, cert. denied, 513 U.S. 970, 115 S.Ct. 440, 130 L.Ed.2d 351 (1994).

A. The Uniformity Clause

The Uniformity Clause, Art. VIII, § 1, ¶ 1(a) of the Constitution of 1947, reads:
*10 Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such real property shall be taxed at the general rate of the taxing district in which the property is situated, for the use of such taxing district.
Under the Uniformity Clause, real property must be assessed according to the same standard of value and taxed at the same rate of tax. See Switz v. Kingsley, 37 N.J. 566, 585,182 A.2d 841, 850-51 (1962). It is clear that “[t]he Legislature is free to tax personal property in any way so long as the classifications are reasonable and the property is assessed under general laws and by uniform rules.” General Motors Corp. v. Linden, supra, 150 N.J. at 526, 696 A.2d at 685. However, “[t]he Legislature cannot define real and personal property in order to escape the purpose and intendment of the Uniformity Clause.” Id. at 544, 696 A.2d at 694 (Handler, J., concurring).
It is Mobil’s position that because petroleum refineries have historically been treated as real property, they must continue to be so treated as a matter of constitutional law. Notwithstanding, the Legislature has broad discretion (but not “unbounded power”) in the classification of personal property for exemption or taxation treatment. See General Motors Corp. v. Linden, supra, 150 N.J. at 526-33, 696 A.2d at 685-89. Accordingly, if petroleum refinery equipment is properly characterized as personal property, then it follows that the Legislature may single out that property for “preferential treatment”, ibid., and the courts, as stated in Switz v. Kingsley, supra, 37 N.J. at 585, 182 A.2d at 850-51, “must uphold the classification if any set of facts can reasonably be conceived to support [that treatment].” Id. at 586, 182 A.2d at 851 (citing New Jersey Restaurant Ass’n v. Holderman, 24 N.J. 295, 301, 131 A.2d 773, 776 (1957); Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199, 228, 160 A.2d 265, 280 (1960)).
The Legislature, in enacting the Act, intended that municipalities continue to tax petroleum refineries, including the machinery and equipment used directly to manufacture petroleum products from crude oil. See N.J.S.A 54:4-1. In its statement appended to S. 332, (enacted as L. 1992, c. 24) the Senate Budget and *11 Appropriations Committee Statement (reprinted in New Jersey Statutes Annotated Supp. 1997, following N.J.S.A. 54:4-1.13), provides that:
[T]he bill amends subsection b. of R.S. 54:4-1 to specify that items of machinery, apparatus or equipment used in the conduct of a business are defined as personal property regardless of the class or type of real property to which such items may be affixed____ However, the bill provides that the machinery, apparatus or equipment of a petroleum. refinery directly used for refining crude oil into petroleum products is taxable by local taxing districts. Equipment used for such other purposes as chemical or petrochemical manufacturing is not included in the locally taxable property, even if it is located on the grounds of a petroleum refinery.
The words of the statute are quite clear in that “Personal property taxable under this chapter shall include ... machinery, apparatus, or equipment of a petroleum refinery ...” N.J.S.A. 54:4-1. The plain language of the statute reasonably leads to the conclusion that the machinery in issue be taxed in the same manner provided for personal property. It should be noted that in construing tax legislation, words contained in a statute are to be given their ordinary and primary meaning in the absence of a specific intent to the contrary. See Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 526, 197 A.2d 673, 675-76 (1964); Eagle Plaza Associates v. Voorhees Tp., 6 N.J.Tax 582, 590 (1984).
If some or all of the items of petroleum refinery equipment are personal rather than real property pursuant to N.J.S.A. 54:4-l(a) and (b), then they may be taxed as personal property consistent with both the Uniformity Clause, the language of N.J.S.A. 54:4-1, and with guidance from the New Jersey Supreme Court’s opinion in General Motors.
In the General Motors case, the City of Linden, in response to the property tax appeals filed by General Motors Corp., challenged the constitutionality of the Act, claiming that the legislature’s definition of what machinery, apparatus, or equipment used in business constitutes real property subject to local real property tax assessment violated the Uniformity Clause of the New Jersey Constitution. The New Jersey Supreme Court found the Act to be constitutional on its face. “It represents an effort by the Legislature to define a class of business personal property that would not have been considered real property under the common- *12 law understanding of real property at the time of the 1947 Constitution.” Id. at 539, 696 A.2d at 692. Therefore, the Court found that the business personal property at issue could not be considered real property at the time the 1947 Constitution was adopted, and held that the Act did not create an unconstitutional tax exemption for real property favoring business and industry in violation of the Uniformity Clause. Id. at 540, 696 A.2d at 692.
Unlike the General Motors ease, which addressed the broader issue of whether property used in business constitutes real property, the present matter before this court concerns a narrower concentration on whether property used in the petroleum refinery process constitutes real property. As such, this court must address the issue of whether the Legislature’s focus on the petroleum refinery process is an impermissible classification that violates the Uniformity Clause. Since the Uniformity Clause only applies to real property, N.J. Const. (1947), Article VIII, § 1, ¶ 1, and “(b]ecause the Legislature does not have unbounded power to determine when property shall be considered realty or personalty, we therefore must ask what is real property or, more specifically, what would the framers of the 1947 Constitution have understood real property to be[?]” Id. at 533, 696 A.2d at 688 (alteration in original).
The Supreme Court in General Motors thoroughly explained the evolution of New Jersey’s law of trade fixtures and when certain chattels become fixtures. The prevailing law at the time that the 1947 Constitution was adopted was referred to as the “institutional doctrine”. Prior to the New Jersey Supreme Court’s ruling in Bayonne v. Port Jersey Corp., 79 N.J. 367, 399 A.2d 649 (1979), New Jersey followed the institutional doctrine which expanded the definition of fixtures to include even readily removable personal property necessary to the operation of the structure for its particular purpose. Feeder v. Van Winkle, 53 N.J.Eq. 370, 372, 33 A. 399, 399 (E. & A. 1895). “The focus of the institutional doctrine was on the integration of the product into the use of the structure, virtually eliminating the requirement of physical annexation to the extent that removal would materially injure the freehold.” Hall v. Luby Corp., 232 N.J.Super. 337, 346, 556 A.2d 1317, 1322 (Law *13 Div.1989). Therefore, under the institutional doctrine, almost any personal property used in trade or business could be considered a fixture. See Bayonne v. Port Jersey Corp., supra, 79 N.J. at 375-76, 399 A.2d at 653.
In footnote 3 of the Bayonne case, it is noted that, “[pjrofessor Grant Gilmore points out that cases invoking the institutional doctrine seem to have disappeared from the New Jersey Reports after 1940, ‘at a point when it seemed that maximum confusion had been achieved.’ 2 G. Gilmore, Security Interests in Personal Property, s 28.6, p. 768 (1965).” Id. at 376, 399 A.2d at 653. Accordingly, it is reasonable to conclude that the Supreme Court in General Motors was referring to American common-law and not the institutional doctrine in determining what the framers of the 1947 Constitution understood real property to be. Since the New Jersey courts have been reluctant to apply the institutional doctrine, it follows that the 1947 framers must have contemplated something other than the institutional doctrine. It is therefore necessary for this court to examine the American common-law and determine whether petroleum refineries are considered real property or simply personal property used in trade or business.
In Brearley v. Cox, 24 N.J.L. 287 (Sup.Ct.1854), the Court held that:
the true criterion of a fixture is the united application of the following requisites: 1, actual annexation to the realty, or something- appurtenant thereto; 2, application to the use or purpose to which that part of the realty with which it is connected is appropriated; 3, the intention of the party making the annexation to make a permanent accession to the freehold.
[Id. at 289.]
The three-part test in Brearley essentially restates the prevailing American common-law fixtures test, composed of the elements of affixation, adaptation, and intention. See generally Alphonse M. Squillante, The Law of Fixtures: Common Law and the Uniform Commercial Code, 15 Hofstra L. Rev. 191 (1987). The leading case regarding fixtures is the Ohio case of Teaff v. Hewitt, 1 Ohio St. 511 (1853). The court in Teajf noted that:
[Different understandings of the law of fixtures had arisen in the case of business property. “The business of manufacturing ... is a pursuit personal in its character and not strictly subservient to real estate, or essential to the enjoyment of the *14 freehold.” Id. at 535. The court reasoned that real and personal property could be united for some business purpose without each losing their particular character. Ibid. Teaff distinguishes between chattels devoted to the business conducted on the premises from fixtures devoted primarily to the realty itself.
[General Motors, 150 N.J. at 535-36, 696 A.2d at 690.]
Mobil maintains that since the process equipment of petroleum refineries has always been taxed as real property, the refinery equipment at issue in this case should also be considered real property, thus rendering the Act’s reclassification of the equipment unconstitutional. In support of this position, Mobil cites Chevron U.S.A. v. City of Perth Amboy, 9 N.J.Tax 205 (1987). In Chevron, the taxpayer sought a determination as to whether improvements consisting of a crude oil refinery including the process units, related support facilities, instrumentation, piping and storage tanks were taxable as real property. The taxpayer also challenged the constitutionality of L. 1986, c. 117 (“Chapter 117”) which amended N.J.S.A 54:4-1 and N.J.S.A 54:11A-2 by establishing new standards for determining whether property is taxable as real property. Id. at 218. The tax court held that “even though Chevron’s refinery could be removed without material injury to itself or the real property ... the machinery, equipment, and process units implicated in Chevron’s refinery are ordinarily intended to be affixed permanently to real property pursuant to c. 117.” Id. at 244. Therefore, the refinery was taxable as real property.
Mobil’s reliance on Chevron in the present matter is misplaced. The fact that property may have been assessed as real property does not compel a conclusion that it was real property under common law. Furthermore, the Tax Court’s ruling in 1987 applying the Bayonne test does not guide the court in determining whether the Legislature in 1947 would have viewed the refinery equipment as real property under the common law which is the relevant inquiry for this analysis as the Supreme Court held in General Motors. Accordingly, this court must be guided by the common law as of 1947, in order to determine the Legislature’s understanding of what was considered real property at the time the 1947 Constitution was adopted.
*15 The New Jersey Supreme Court in General Motors noted that Teajfv. Hemtt remains the leading case on this topic.[3] No New Jersey eases decided at the time the 1947 Constitution was adopted address whether petroleum refinery machinery and equipment was considered personal business property or real property. The Supreme Court of Ohio, however, addressed this very issue in 1945.[4]
In Zangerle v. Standard Oil Co. of Ohio, 144 Ohio St. 506, 515, 60 N.E.2d 52 (1945), the Supreme Court of Ohio discussed the elements under Teaff to determine whether machinery and equipment used in the process of oil refining, installed on land, remained taxable as personal business property or were fixtures and therefore taxable as real property. In addressing the issue of reclassification under the Ohio Constitution’s Uniformity Provision similar to the facts presented here, the Supreme Court of Ohio held:
For the purposes of classification of annexed property as realty or personalty, the Ohio eases, herein cited, have clearly drawn a fundamental distinction between annexations which would be integrated with and of permanent benefit to the land regardless of its future use, such as a heating furnace, motive-power machinery, water systems, drainage and sewer systems, accessory to the land and not to the business carried on; and annexations of special-purpose, manufacturing or processing machinery and structures which could be used only in a particular business or industry and not in any norma! use to which the iand might be devoted, and hence accessory to the business in which they function and not accessory to the land. The decisive test of appropriation is whether the chattel under consideration in any ease is devoted primarily to the business conducted on the premises, or whether it is devoted primarily to the use of the land upon which the business is conducted. 36 Corpus Juris Secundum, Fixtures, pp. 912 to 914, §§ 8-10.
*16 [Zangerle, 144 Ohio St. at 515-516, 60 N.E.2d 52.]
Additionally, the Supreme Court of Ohio considered the requirement that for an item to become a fixture, there must be shown to be an intention on the part of the annexer to make the chattel a permanent accession. The Court held that:
Whether in a given ease, property attached to a building upon real estate should be deemed to be a part of the real estate, in the last analysis, a question of intention to be inferred or implied from all the surrounding circumstances. Fehleisen v. Quinn, Recr., 182 Iowa 1283, 165 N.W. 213; 36 Corpus Juris Secundum, Fixtures, p. 894, § 2.
The intention of the annexer must be determined from the nature of the article affixed: the relation and situation of the party making the annexation; the structure and mode of annexation; the purpose or use for which the annexation has been made, taking into consideration whether it was made with a view of permanence or with a view of serving a special purpose or business; the economic advantage, if any, of treating the annexed property as real or personal; the relationship between the parties interested in the land and chattel and the resulting equities arising from such relationship; and contracts or agreements between those having ownership or equitable interests in the chattel, tending constructively to annex such chattel to or to sever it from real estate.
[Id. at 519, 60 N.E.2d 52.]
In finding that the machinery and equipment used in the refining process were not realty but personalty, the Supreme Court of Ohio held that “[m]achinery installed on land for the benefit of an industry located thereon, which, if the industry itself was removed would be of no particular benefit to the naked land, cannot be considered for tax purposes an improvement on land, but personal property.” Id. at 520, 60 N.E.2d 52. Because Zangerle provides the prevailing view of the common law of fixtures relating to refinery machinery and equipment in 1945, and further since the Supreme Court in General Motors noted that Teaff v. Hewitt remains the leading case on topic (which was decided in 1853 and further discussed in Zangerle), it is reasonable to conclude that this was the Legislature’s understanding of the law of real property in 1947, when the framers adopted the Constitution.
Therefore, because the machinery,' apparatus, and equipment used in the petroleum refinery process would not have been considered real property at the time of the 1947 Constitution, the Uniformity Clause does not apply in the instant case and, hence, *17 the Act does not redefine what is real property in violation of the Uniformity Clause. Rather, it merely represents an effort by the Legislature to define a certain class of business personal property that would not have been considered real property under the common-law understanding of real property at the time of the 1947 Constitution was adopted. Accordingly, this court finds that the Act does not violate the Uniformity Clause of the New Jersey Constitution of 1947.

B. The Act as a Revenue Raising Measure.

N.J. Const. (1947), Art. IV, § 6, ¶ 1, provides, “[a]U bills for raising revenue shall originate in the General Assembly; but the Senate may propose or concur with amendments, as on other bills.” Mobil argues that the Act is a revenue-raising bill and is unconstitutional because it arose in the Senate. Mobil contends that the Act is a revenue raising bill because N.J.S.A. 54:4-1, as amended by the Act, causes machinery and equipment of refineries to be taxed under a different scheme of taxation. Mobil’s argument is without merit.
The Origination Clause has been consistently construed to be applicable only to those bills that impose a tax or levy. See e.g., Agnes v. Bugbee, 114 N.J.Eq. 324, 168 A. 422 (Prerog.Ct., 1933) (upholding the constitutionality of a statute exempting certain educational institutions from taxation).[5] In State v. Thermoid Co., 16 N.J. 274, 108 A.2d 421 (1954), in considering the constitutionality of a custodial escheat act that had originated in the Senate, the Supreme Court quoted with approval the commentary of Justice Story on a similar provision contained in the Federal Constitution to the effect that the limitation “has been confined to bills to levy taxes in the strict sense of the words, and has not been understood to extend to bills for other purposes, which may incidentally create revenue.” Id. at 277, 108 A.2d at 423. See also *18 Thio1kol Chemical Corp. v. Morris County Bd. of Taxation, 76 N.J.Super. 232, 243-44, 184 A.2d 75, 81-82 (Law Div.1962), aff'd on other grounds, 41 N.J. 405, 197 A.2d 176 (1964). The Court held that while the escheat act (which did not originate in the assembly) produced revenue, it did not impose a tax or a levy and was therefore constitutional. See State v. Thermoid Co., 16 N.J. at 279, 108 A.2d at 424.
Plaintiff mistakenly relies on Thiokol Chemical Corp. to support its position. In contrast to the present statute, the statute at issue in Thiokol Chemical Corp. was explicitly intended to raise revenue. In holding that statute unconstitutional, the trial court relied in part on the introducer’s statement asserting that, “the purpose of this bill is to permit municipalities to levy and assess taxes on exempt property when the same is leased for private use. In many municipalities the Federal Government leases its exempt property to business and industry while the same remains exempt from taxation.” 76 N.J.Super. at 238, 184 A.2d at 78. Moreover, the defendants in Thiokol conceded that the statute was intended to raise municipal revenue. Id. at 243, 184 A.2d at 81. In reliance upon State v. Thermoid Co., supra, and its approval of Justice Story’s view that the Origination Clause applies only to bills that levy taxes in the strictest sense, the trial court found that the statute contravened the Origination Clause. 76 N.J.Super at 243-45, 184 A.2d at 81-82.
The purpose of the Act in the present matter was “to refine the definitions of real property and personal property in order to reaffirm the broad exclusion from local property taxes of business personal property used or held for use in business.” L. 1992, c. 24, codified at N.J.S.A. 54:4-1.14. As stated by our Supreme Court, “[w]ith [the Act], the Legislature continued to clarify its intent to distinguish between property integrated with the business, and property integrated with the realty upon which the business is located.” General Motors Corp. v. Linden, 150 N.J. at 532, 696 A.2d at 688. The Act was not intended to be a revenue raising measure. If anything, the Act anticipated that some business property previously assessed for local taxation would become exempt. See, the veto message of Governor Florio dated *19 June 1,1992. Proof of this lies in Governor Florio’s veto message which proposed a phase-in of reductions in assessments of personal property over a five year period in order “to provide municipalities with protection in the event that the bill does have some effect in isolated instances.” Id. This proposal was incorporated as Section 6 of the Act and there was no expectation then that the Act would increase revenue. Therefore, the Act does not levy taxes in the “strict sense” and therefore is not a revenue raising measure within the meaning of N.J. Const. (1947), Art. IV, § 6, ¶1.

C. As Applied, the Act Does Not Constitute Special Legislation.

Mobil contends that, as applied, the Act constitutes impermissible special legislation. Mobil argues that the defendant’s application of the Act results in an improper classification of similarly situated taxpayers and, as such, Mobil concludes that it is being taxed under a different scheme from every other refinery in the state.
The New Jersey Constitution provides that:
9. The Legislature shall not pass any private, special or local laws:
(6) Relating to taxation or exemption therefrom.
[N.J. Const (1947) Art. IV, § 7, 119(6).]
“In determining whether a classification constitutes ‘special law’ prohibited by the New Jersey Constitution, the test is similar to that used in determining whether the legislation meets the equal protection guarantee of the United States Constitution. Mahwah Tp. v. Bergen County Bd. of Taxation, 98 N.J. 268, 486 A.2d 818 (1985), and Robson v. Rodriquez, 26 N.J. 517, 528, 141 A.2d 1[, 7] (1958).” Chevron, 9 N.J.Tax at 226. To determine whether a statute constitutes special legislation, the Supreme Court established a three part test in Vreeland v. Byrne, 72 N.J. 292, 370 A.2d 825 (1977). Brown v. Twp. of Old Bridge, 319 N.J.Super. 476, 725 A.2d 1154 (App.Div.1999).
ITJhe method of analysis is this: we first discern the purpose and object of the enactment. We then undertake to apply it to the factual situation presented. *20 Finally, we decide whether, [a]s so applied, the resulting classification can be said to rest upon any rational or reasonable basis relevant to the purpose and object of the act.
[Vreeland v. Byrne, 72 N.J. 292, 300-01, 370 A.2d 825, 829 (1977).]
Prior to applying the Vreeland test, the Supreme Court has provided three guiding principles applicable to determining whether a statute is unconstitutional as special legislation. See Mahwah v. Bergen County Board of Taxation, 98 N.J. 268, 282, 486 A.2d 818, 825-26 (1985). First, “a statute is presumed to be constitutional and it will not be declared void unless the statute is clearly repugnant to the Constitution. Paul Kimball Hosp. v. Brick Township, 86 N.J. 429, 446-47, 432 A.2d 36[, 44-45] (1981); Brunetti v. New Milford, 68 N.J. 576, 599, 350 A.2d 19[, 31] (1975); Harvey v. Essex County Bd. of Freeholders, 30 N.J. 381, 388, 153 A.2d 10[, 14] (1959).” Id. at 282, 486 A.2d at 825 Second, “the burden is on the party challenging the constitutionality of the statute to demonstrate clearly that it violates the constitutional provision. Piscataway Township Bd. of Educ. v. Caffierre [Caffiero], 86 N.J. 308, 318, 431 A.2d 799[, 804] (1981); Jamouneau v. Horner [Harner], 16 N.J. 500, 515, 109 A.2d 640[, 647-48] (1954); In re Freygang, 46 N.J.Super. 14, 133 A.2d 672 (App.Div.), aff’d, 25 N.J. 357, 136 A.2d 625 (1957).” Id. at 283, 486 A.2d at 826. Third, “in deciding whether an act is special or general legislation, the determining factor is what is excluded, not what is included. Budd v. Hancock, 66 N.J.L. 133, 48 A. 1023 (Sup.Ct.1901).” Id.
The court finds that the Legislature’s classification of petroleum refineries does not constitute impermissible special legislation. The relevant test is whether there is any rational basis or reasonable basis relevant to the purpose and object of the act. Vreeland, 72 N.J. at 301, 370 A.2d at 829-30; Chevron, 9 N.J.Tax at 226-27. The Legislature is presumed to have a valid classification and distinctions will be presumed to rest on a rational basis if there is any conceivable state of facts that would afford reasonable support for them. Mahwah v. Bergen County Bd. of Taxation, 98 N.J. at 286, 486 A.2d at 827-28. The burden of showing that there is no rational basis or reasonable basis for the classification is on the plaintiff. See Mahwah v. Bergen *21 County Bd. of Taxation, 98 N.J. at 283, 486 A.2d at 826; Chevron, 9 N.J.Tax at 226. As long as there is some reasonable basis for the different treatment, the statute will be upheld. “In seeking a rational purpose for a statute under constitutional challenge, ‘the court is not limited to the stated purpose of the legislation, but should seek any conceivable [rational] basis.’ Mahwah, 98 N.J. at 286, 486 A.2d 818[, 827].” Town of Secaucus v. Hudson County Bd. of Taxation, 133 N.J. 482, 494-95, 628 A.2d 288, 294 (1993).
The Supreme Court in Switz found that “[t]he Legislature ... has broad discretion in the classification of personal property for exemption or preferential treatment. We must uphold the classification if any set of facts can reasonably be conceived to support it.” Switz v. Kingsley, 37 N.J. 566, 586, 182 A.2d 841, 851 (1962). See also General Electric Company v. City of Passaic, 28 N.J. 499, 509-10, 147 A.2d 233, 238 (1958) (the Legislature has the power to foster a particular industry with tax exemptions as long as the classification has a rational basis).
A law is regarded as special legislation “ ‘when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, [the law] would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes.’ ”
Secaucus v. Hudson County Board, of Taxation, supra, 133 N.J. at 494, 628 A.2d at 294 (citations omitted).
Based on the foregoing, the court finds that there is a rational or reasonable basis for the classification since Mobil’s refinery is not being taxed under a different scheme than every other refinery in the state. Accordingly, the Act does not violate Art IV, § 7, ¶ 9(6) of the New Jersey Constitution.

III. Allowing for a Determination of Market Value to Rebut the Legislative Declaration of N.J.S.A. 54:4-2.45.

Mobil asserts that if the court determines that the taxation of petroleum refinery equipment as personal property pursuant to N.J.S.A. 54:4-1 is constitutionally valid, then the court should rale that the presumption contained in N.J.S.A. 54:4-2.45, pertaining to *22 the valuation of such property, is rebuttable.[6] The court finds that such a ruling at this time is premature.
N.J.S.A 54:4-2.45 provides that:
The true value of taxable tangible personal property used in business owned by a taxpayer shall be presumed to be the original cost of such property less depreciation as of the assessment date, as shown by the books and records of the person assessed, provided that the true value of depreciable property shall, so long as such property remains in use or is held for use, be presumed to be not less than 20% of its original cost.
It is clear from the plain language of N.J.S.A 54:4-2.45 that the presumption applies only to “tangible personal property”. In finding the Act valid, the court has made no determination regarding the status of Mobil’s petroleum refinery equipment as personal or real property. That determination is unrelated to the constitutional issues already addressed by this court, and will be made at a later time in the litigation prior to proceeding to the issue of value. Until that determination is made, the court need not address the argument that the presumption contained in N.J.S.A 54:4-2.45 is rebuttable.
For all of the foregoing reasons, the Court finds that the Act is constitutional. Accordingly, Mobil’s motion seeking a declaratory judgment that the portion of the Act, codified in the first paragraph of N.J.S.A. 54:4-1 is unconstitutional, is denied. Furthermore, Mobil’s motion for declaratory judgment finding the presumption of true value as contained in N.J.S.A 54:2-2.45 to be rebuttable, is also denied.

The amendment of NJ.S.A. 54:4-1 by the Act provided a definition of what machinery and equipment of a petroleum refinery constitutes real or personal property for local property tax purposes.

 See, e.g., deposition of William E. Birchall, Jr., Woodbridge Township assessor, T20-10 to T20-21 (he never physically inspected items being assessed as personal property); see also, deposition of William D. Wheeler, Perth Amboy assessor, which disclosed that the property is no longer used as a petroleum refinery, thus making the assessment of machinery and equipment at the refinery irrelevant to this case (T8-15 to T8-18). Mr. Wheeler had no independent knowledge of the nature of the machinery and equipment and whether it would meet the three part test of N.J.S.A. 54:4-l(a) (T9-6 to T19-3). Also, Linden's current assessment of petroleum refinery machinery and equipment was not made as a consequence of its assessor's familiarity with any particular piece of equipment, since he was unclear as to precisely what was included in the assessment (Deposition of Emanuel F. Frangella, Jr., T32-21 to T35-4; T43-1 to T46-18; T47-22 to T47-24).

 Based on the Teaff decision and the decision in Zangerle v. Standard Oil Co. of Ohio, 144 Ohio St. 506, 515, 60 N.E. 2d 52 (1945), Ohio courts “have regarded as personal property a variety ot items used for manufacturing and transportation, including stone piers and bridge abutments construed by a railroad company on its easement ..." See Cleveland Elec. Illum. Co. v. Continental Express, 106 Ohio Misc.ld 19, 23, 733 N.E.2d 328, 330 (1999).

 It must be noted that the Ohio courts have begun to take "a different view of machinery and equipment that serve a more general purpose, such as motive-power, water, drainage and sewer equipment, and utilities, since sucli equipment improves or benefits the real property as well as the business that is situated on the real property.” Cleveland Elec. Illum. Co. v. Continental Express, 106 Ohio Misc.2d 19, 23, 733 N.E.2d 328, 330 (1999).

 In upholding the constitutionality of the statute, the Court stated, "obviously, however, it is not in itself a bill for raising revenues; its purpose and effect is rather somewhat to decrease revenue than to increase it.” Agnes v. Bugbee, 114 N.J.Eq. 324, 327, 168 A. 422, 424 (Prerog.Ct., 1933).

 The constitutional issues discussed supra were initially argued before the Honorable Francine I. Axelrad, who was subsequently elevated to the Appellate Division. Mobil filed papers involving this supplemental argument on May 27, 1999. The supplemental argument was argued before the Honorable Joseph C. Small, who subsequently had to recuse himself from the case.