NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

# TAX COURT OF NEW JERSEY



**MARY SIOBHAN BRENNAN**
JUDGE

Essex County Dr. Martin Luther King, Jr. Justice
Building 495 Martin Luther King Blvd. - Fourth Floor
Newark, New Jersey 07102-0690
(609) 815-2922 Ext. 54600
Fax: (973) 424-2424

December 03, 2021

Steven J. Jozwiak, Esq.
601 Longwood Avenue
Suite 300
Cherry Hill, New Jersey 08002

Heather Lynn Anderson, Esq.
Office of the Attorney General
Division of Law
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 106
Trenton, New Jersey 08625

> Re: **E.S.S. Co. v. Director, New Jersey Division of Taxation**
> Docket No. 007589-2016
>
> **Dorothea H. Daraio v. Director, New Jersey Division of Taxation**
> Docket No. 007595-2016

Dear Mr. Jozwiak and DAG Anderson:

This letter opinion sets forth the court's findings of fact and conclusions of law on the parties cross-motions for summary judgment in the above referenced related matters. R. 1:7-4.

For the reasons explained more fully below, the court affirms the Director's January 6, 2016 Final Determination of Corporate Business Tax and Sales and Use Tax Assessment against plaintiff E.S.S. Co. The court denies the Director's motion and grants the plaintiffs' motion for summary judgment as to the Director's January 6, 2016 Final Determination of Gross Income Tax – Employer Withholding against plaintiff E.S.S. Co. Finally, the court concludes that plaintiff Dorothea H. Daraio is a responsible officer of E.S.S. Co., for the fourth quarter of 2009, and 2010,






and is, therefore, responsible for the company's outstanding Sales and Use Tax liabilities for that period.

## I. Findings of Fact and Procedural History

The following findings of fact are based on the certifications and exhibits submitted on the motions.

During the period January 2000 through December 2010, plaintiff Dorothea H. Daraio ("Daraio") was the president and sole shareholder of plaintiff E.S.S. Co. ("Company") a New Jersey corporation established in 1998. The Company was in the business of providing traffic control services referred to as "flagging." This included providing personnel to stand near projects conducted around roads and to wave flags to help notify and direct oncoming traffic. The Company's largest customer was Verizon.

Daraio operated the Company out of her mother's residence in Marlton, New Jersey. She was responsible for the Company's day-to-day operations of the Company, except for the period from September 27, 2006 through October 12, 2009, during which time she was incarcerated in a federal prison for a conviction for tax evasion.[1] During her period of incarceration, she appointed her daughter as administrator for the Company. The Company ceased operations in early 2011.

Prior to Daraio's incarceration, the Company did not file Sales and Use Tax ("SUT") returns because Daraio believed that the Company did not conduct any business that included the sale of any non-exempt tangible personal property. Upon her release from prison in 2009, she returned to operating the Company, and discovered that the books and records were in complete disarray. Daraio learned that the accountant retained to organize the books and records, and to file

---

[1] Federal prison regulations do not permit prisoners to associate with the operation of a business during their confinement.

2

the applicable tax returns, during her incarceration had failed to do so, and had quit. Daraio attempted to reconstruct the Company's business records and hired a new accountant.

She also learned that SUT had been charged to and collected from two clients (Verizon and Meridian), but only partially remitted to the New Jersey Division of Taxation during 2006 and 2007 and failed to file any SUT returns. Thereafter, upon inquiry by the Company's new accountant, a New Jersey Division of Taxation taxpayer service representative sent an email dated June 4, 2010, confirming that structural flagging is not subject to SUT.

Defendant, Director, New Jersey Division of Taxation ("Director") commenced an audit of the Company in June 2011. The Company was audited for Corporate Business Tax ("CBT") for the period of January 2000 through December 2010, SUT for the period January 2005 through December 2010, and Gross Income Tax - Employer Withholding ("GIT") for the period January 10, 2010 through December 2010.

 As of commencement of the audit, the Company's 2002, 2003, 2004, 2006, 2007, 2008, 2009, and 2010 CBT returns were still showing as delinquent. Furthermore, the Company only filed SUT quarterly returns for the first quarter 2007, and all quarters for 2010.

The Division's auditor met with Daraio, her accountant, and her attorney on November 29, 2011. At that time, Daraio completed and signed the pre-audit questionnaire.  Sales invoices for 2010 were given to the auditor for review. The Division gave Daraio an Acknowledgment of Responsibility form, however she refused to identify a responsible person for SUT.  Daraio identified her prior accounting firm as being responsible for filing GIT and CBT returns.

During this initial meeting, Daraio claimed that despite her belief that the Company's services were nontaxable, Verizon, the Company's client, insisted it be charged SUT. The auditor

3

concluded that there were some taxable rentals for items such as cones and flags.[2] The auditor's review of the 2010 sales invoices revealed that on some invoices, SUT was charged, and on other invoices with identical line-items, SUT was not charged. In some instances where SUT was charged, the SUT was applied to both taxable and non-taxable line items.

Over the next two years, the auditor repeatedly extended the Company's period of time to provide the following documents:

- Sales invoices (2005-2010);
- Sales journals (2006-2010);
- Income statements (2006-2010);
- General ledgers (2006-2010);
- Cash disbursement journals (2006-2010);
- Verizon's 1099s (2006-2010);
- Bank statements with cancelled checks (2001-2010);
- NJ CBT returns (2002-2010);
- S&U returns with supporting schedules (2010);
- Property tax bills for business location (2000-2004);
- Rental or lease agreement for rent expenses (2011-2012);
- Documentation for postage expenses;
- Documentation for gasoline expenses;
- Chart of accounts;
- Payroll information (2009-2010);
- Employee lease agreement with Allegiant Professional.

Although auditor requested this information, the Company only provided sales invoices from 2010 and a few bank statements. By letter dated June 27, 2014, the Company was given until August 31, 2014 to provide the additional documentation requested and was notified of the impending arbitrary assessment amounts due, including penalties and interest, if the information was not provided.

The auditor also scheduled several meetings with Daraio and her accountant to discuss and review the records necessary for the audit. During a November 3, 2014 meeting, Daraio confirmed

---

[2] Carting vehicles and signs were deemed to be part of the non-taxable service as indicated in a Division document note dated November 9, 2018.

that the Company had been charging SUT on sales invoices to Verizon since 2006. Daraio's daughter, who was running the Company while Daraio was incarcerated, included SUT on the invoices to Verizon but neglected to remit all the collected SUT to the Division.[3]

It is undisputed that when Daraio was released from prison in October 2009, she resumed the running of the Company. At that time, she became aware that the Company's records were in disarray, and that SUT was charged on Verizon invoices. Daraio told the auditor that she credited the SUT that Verizon had paid in the past to Verizon's 2010 open invoices since she believed that the flagging services performed by the Company were not taxable. Thus, reducing the amount Verizon owed to the Company.

Despite time and opportunity, the necessary, complete, and statutorily required records were not produced to the Division. The Company failed to provide complete sales records, sales invoices, sales journals, income statements, general ledgers, cash disbursement journals, 2002 and 2006 through 2009 CBT returns, complete bank statements, documentation to support the Company's expenses, documentation to support the filed SUT returns, property tax bills or a lease for the business location, a chart of accounts, payroll information, or the employee lease agreement.

Although incomplete in total, the most complete records produced were for tax year 2010. Additionally, only a few of the outstanding CBT returns were filed. The auditor decided to use the 2010 documents to reconstruct and calculate the Company's outstanding tax liabilities (and by statutory extension Daraio's) for the audited years.

The audit concluded on November 30, 2014. To calculate, CBT, SUT, and GIT for the years at issue, the auditor utilized the little documentation provided. An arbitrary, additional

---

[3] Some SUT was remitted to the Division in tax years 2006, 2007, 2010 and 2011.

assessment of $25,000 per year was calculated for the 2000 through 2010 CBT periods, due to the lack of records for both sales and expenses. An arbitrary assessment of $700,000 was also issued for SUT, covering the periods 2005 through 2011, excluding the 1st quarter of 2007 which was time barred. The 2010 GIT period was also arbitrarily assessed at $1,000.

On December 14, 2014, the Director issued a Notice of Finding of Responsible Person Status to Daraio. The Director calculated the applicable interest and penalties on the additional taxes due and issued a Notice of Assessment related to the Final Audit Determination, as to the Company, on December 22, 2014 in the amount of $1,773,971.07.

On February 18, 2015, the Company and Daraio filed administrative protests contesting the additional assessments against them. On January 6, 2016, the Conferee issued a Final Determination as to the Company in the amount of $1,884,844.25, including penalty and interest calculated to January 15, 2016. On that same date, the Conferee issued a Final Determination to Daraio upholding the Notice of Finding of Responsible Person Status as to the SUT and GIT assessments in the amount of $1,272,961.21 plus penalties and interest.

On April 4, 2016, the Company and Daraio filed separate complaints with the Tax Court contesting the CBT, SUT, and GIT assessments against the Company, and the responsible party determination against Daraio. During the discovery period that followed, some additional documentation was provided. The auditor and the tax appeal liaison reviewed this additional documentation at a September 26, 2018 meeting. That documentation confirmed that the Company charged and collected SUT on certain sales but failed to remit all the SUT to the Division.

Despite the additional documents, there still was not complete documentation for any single audit year. The 2010 records remained the most complete, and therefore the Division

continued to calculate the amount of SUT collected and not remitted during the entire audit period, using the 2010 records.

As a check and balance, the Division's tax appeal liaison employed a second methodology. He decided to estimate how much SUT was collected during the audit period by comparing the SUT collected in 2010 to the gross sales for that year. He calculated an effective tax percentage of 4. 26%, to be applied to the entire audit period. He applied 4.26 % to the gross receipts reported on the Company's CBT returns for 2007, 2008 and 2011. Since CBT returns were not filed for tax years 2006 or 2009, he estimated the gross receipts by averaging the prior and subsequent years. The tax appeal liaison reduced each year's estimated sales tax collected amounts by the amounts reported by the Company for each period under audit. His final determination was that the Company owed additional SUT, that was collected and not remitted, in the amount of $704,939.02.[4]

The Company also eventually provided the Division with some information and documentation regarding its employees and payroll taxes. Prior to Daraio's incarceration, the Company maintained approximately 20 employees. During Daraio's imprisonment and into the beginning of 2010, the Company used Allegiant Professional Business Services to supply the labor. In April 2010, the Company hired employment and contracted with Prime Payroll to pay the weekly payroll, withhold appropriate taxes, file tax returns, and remit payroll taxes to the applicable government agencies.

At the conclusion of all discovery on June 24, 2021, the parties reported to the court the existence of two failed tentative settlement agreements. A trial date was scheduled for November

---

[4] The Director did not increase the original estimated assessment of $700,000 since the statute of limitations had passed.

16, 2021. Subsequently, the Director filed a motion for summary judgment as to both complaints on September 9, 2021, requesting that the complaints be dismissed with prejudice. In their motion, the Director argued that plaintiffs failed to provide adequate books and records, and that its determinations were entitled to a presumption of correctness.

The Company and Daraio opposed the motion and filed cross-motions alleging the Director's methodology was aberrant and flawed, and that Daraio was not responsible for any SUT or GIT assessments against the Company. The court heard oral argument on October 22, 2021, and the parties provided the court with final submissions on both November 10, 2021, and November 16, 2021.

## II. Conclusions of Law

Summary judgment should be granted where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. R. 4:46-2 (c). In Brill v. Guardian Life Ins. Co. of Amer., 142 N.J. 520, 523 (1995), our Supreme Court established the standard for summary judgment as follows:

> [W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.

In addition, the court's analysis is influenced by the familiar principle that the Director's interpretation of tax statutes is entitled to a presumption of validity. "Courts have recognized the Director's expertise in the highly specialized and technical area of taxation." Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J. Tax 584, 589 (Tax 1997)(citing Metromedia,

8

Inc v. Director, Div. of Taxation, 97 N.J. 313, 327 (1984)).  The scope of judicial review of the Director's decision with respect to the imposition of a tax "is limited." Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J. Super. 104, 109 (App. Div.), certif. denied, 188 N.J. 577 (2006).  The Supreme Court has directed the courts to accord "great respect" to the Director's application of tax statutes, "so long as it is not plainly unreasonable." Metromedia, supra, 97 N.J. at 327.  See also GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306 (1993)("Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.")(citations omitted).

"When an administrative agency interprets and applies a statute it is charged with administering in a manner that is reasonable, not arbitrary or capricious, and not contrary to the evident purpose of the statute, that interpretation should be upheld, irrespective of how the forum court would interpret the same statute in the absence of regulatory history." Blecker v. State, 323 N.J. Super. 434, 442 (App. Div. 1999).  "[C]ourts are not free to substitute their judgment as to the wisdom of a particular administrative action for that of the agency so long as that action is statutorily authorized and not otherwise defective because arbitrary or unreasonable." Sutton Warehousing, Inc. v. Director, Div. of Taxation, 290 N.J. Super. 686, 697 (App. Div. 1996)(quotations omitted).  "However, despite that deference, an administrative agency's interpretation will not be followed when the agency extends a statute 'to give it a greater effect than its language permits.'"  Oberhand v. Director, Div. of Taxation, 193 N.J. 558, 568 (2008)(quoting GE Solid State, supra, 132 N.J. at 306).

Daraio admits that the Company failed to retain and maintain the books and records as required by statute and regulation. The Division's auditor reviewed the books and records that Daraio supplied and determined that the Company provided taxable rentals and that the Company

failed to collect or charge SUT on certain taxable rentals. Also, the Company collected SUT on both taxable and nontaxable items but failed to remit the collected SUT to the Division. The parties continue to disagree as to the taxability of the services or rentals provided by the Company. The court need not decide that issue as it is basing its summary judgment decision on the undisputed fact that SUT was collected but not remitted to the Division.

For purposes of these motions, the parties agree that Daraio's period of incarceration limits her exposure as a responsible person to the fourth quarter of 2009, and 2010. Consequently, the court finds that there are no genuine issues of material fact that would preclude the court from deciding the legal questions: 1.) whether the arbitrary CBT, SUT and GIT assessments were proper and; 2.) whether Daraio is a responsible officer of the Company from October 2009 through tax year 2010.

**The Director's Assessment of Sales and Use Tax against the E.S.S. Company**

Defendant, Director, Division of Taxation ("Director") moves for summary judgment claiming that it properly assessed additional tax, interest, and penalties on the Company for the audit period January 1, 2006 through December 31, 2010. The Director argues that plaintiff failed to maintain and provide adequate books and records, which authorized the Director to use substitute methodology to reconstruct the SUT collected but not remitted to the Division.

It is firmly established that "an assessment of sales or use tax is presumptively correct." Quest Diagnostics, Inc. v. Dir., Div. of Taxation, 21 N.J. Tax 484, 490 (Tax 2004), aff'd, 387 N.J. Super. 104 (App. Div. 2006). If the challenge to the Director's audit methodology stems from an assertion of inadequate books and records, a plaintiff can only rebut the presumptive correctness of the assessment through "cogent evidence that must be 'definite, positive and certain in quality and quantity to overcome the presumption.'" Yilmaz, Inc. v. Dir., Div. of Taxation, 22 N.J. Tax

10

204, 236 (Tax 2005), aff'd, 390 N.J. Super. 435 (App. Div. 2007). Plaintiffs must offer evidence that focuses on the "reasonableness of the underlying data used by the Director and the reasonableness of the methodology used." Ibid. Only an aberrant methodology will overcome the presumption of correctness; an imperfect methodology will not. Ibid. Further, "naked assertions of a taxpayer, without supporting records or documentation, are insufficient to rebut the presumption that the Director's assessment was correct where it produced no evidence to support its claim that the Director's assessment is correct." Id. at 231.

Pursuant to statute, a corporate taxpayer must keep sufficient books and records for the Division to determine proper sales tax liabilities. N.J.S.A. 54:32B-16; N.J.A.C. 18:24-2.3, -2.4. As further set forth in the regulations, a taxpayer must make available to the Division "[a] true copy of all sales slips, invoices, receipts, statements, memoranda of price, or cash register tapes, issued to any customer . . . and records of every purchase and purchase for lease," which must be retained "for four years from the date of filing of each quarterly sales tax return." N.J.A.C. 18:24-2.3(a).

For tax periods prior to the regulation change in 2016, if summary records are maintained that "show . . . total receipts and taxable receipts," during the tax years under appeal in this case, a taxpayer may "dispose of individual sales slips, invoices, receipts, statements, memoranda of price, or cash register tapes . . . after the lapse of a period not less than 90 days from the last date of the most recent quarterly (or monthly) period for the filing of sales tax returns to which such individual sales documents pertained." N.J.A.C. 18:24-2.4(a); see also 47 N.J.R. 2919(a) (Dec. 7,

2015); 48 N.J.R. 824(a) (May 16, 2016) (amending regulation to eliminate ninety-day exception for individual records and imposing four-year retention period).[5]

If the taxpayer has failed to keep the required books and records, or if the books and records maintained do not clearly reflect income, the Director has broad authority to reconstruct income "by using any information available, whether from the vendor's place of business or from any other source." See N.J.S.A. 54:32B-19; Yilmaz, 22 N.J. Tax at 231, 235; Alpha I, 19 N.J. Tax at 57; L.B.D. Const., Inc. v. Dir., Div. of Taxation, 8 N.J. Tax 338 (Tax 1986); Ridolfi, t/a Hub Bar v. Dir., Div. of Taxation, 1 N.J. Tax 198 (Tax 1980). The determination whether a taxpayer's records are "inadequate" depends on the facts and circumstances of each case. Saulwil, Inc. v. Dir., Div. of Taxation, 2020 N.J. Tax LEXIS 1, at *21 (Tax 2020).

During the relevant tax years, N.J.S.A. 54:32B-3 imposed a sales tax on the receipts from every retail sale of tangible personal property, services and event admissions sold in this State unless specifically exempted elsewhere under the SUT. Further, N.J.S.A. 54:32B-12(a) dictates that persons required to collect the tax must do so when collecting the price of the goods or services sold at retail. This provision designates persons required to collect the tax as State trustees for and on account of the State.

N.J.S.A. 54:32B-12(b) provides that all receipts for property or services of the type mentioned in N.J.S.A. 54:3B-3(a), (b), and (c) are presumed subject to tax under the Act unless the contrary is established. The burden of proving the non-taxable or exempt status of any transaction rests upon the person required to collect the tax or the customer. Ibid. Further, N.J.S.A.

---

[5] Effective May 16, 2016, a taxpayer must "maintain individual sales slips, invoices, receipts, statements, memoranda of price, cash register tapes, or guest checks for a period of four years from the last date of the most recent quarterly period for the filing of sales tax returns." N.J.A.C. 18:24-2.4(a). As the audit period extends only from January 1, 2008 through March 31, 2012, this amended provision does not apply in this case.

54:32B-14(a) provides that every person required to collect sales tax is personally liable for the tax collected, imposed, or required to be collected under the Act.

The Director is responsible for the administration and collection of the tax imposed under the SUT. N.J.S.A. 54:32B-24. With respect to the administration of matters pertaining to SUT returns and reports, N.J.S.A. 54:32B-19 empowers the Director to determine the tax due where (1) if a return required by this act is not filed or (2) if a return when filed is incorrect or insufficient. The Director is authorized to estimate the tax, if necessary, from such information as may be available, including external indices such as stock on hand, purchases, comparable charges, number of employees or other factors <u>Ibid.</u>

Moreover, N.J.S.A. 54:32B-24(4) empowers the Director to prescribe methods for determining the amount of receipts and for determining taxability. N.J.S.A. 54:32B-24(5) empowers the Director to demand persons required to collect the tax to keep detailed records (and furnish the same to the Director on request) of all receipts charged or accrued, records of receipts claimed to be nontaxable, and other specific information regarding all purchase and sales deemed relevant in determining the amount of tax due.

The implementing regulations concerning the SUT Act are found at N.J.A.C. 18:24-1.1 to -37.10. One of the regulations is N.J.A.C. 18:24-2.15(a), which provides that records may be deemed incorrect or insufficient where:

1. An evaluation of the accounting system discloses that the system does not provide adequate internal control procedures which assure the accuracy and completeness of the transactions recorded in the books and records.

2. The records are not maintained in accordance with the general outline of this chapter.

[N.J.A.C. 18:24-2.15(a)].

The Director may then determine the tax amount due "by using any information available, whether from the vendors place of business or from any other source." See N.J.A.C. 18:24-2.15 (b).

Once the Company charged and collected the SUT from its customers, it became statutorily required to remit the collected tax to the proper governmental authority. Upon receipt of the charged and collected SUT, the Company was acting as an escrow agent or trustee for the Division and not an arbitrator or determinative agent legally entitled to adjudge the appropriateness or legality of the tax. The law provides a mechanism for questioning or determining tax-exempt status; in this case, it would have been to remit the SUT and request a refund of the tax paid. The court finds that the Company held absolutely no authority to decide not to remit the collected SUT, and instead credit the collected funds against open invoices. It goes without saying that the Company was also not entitled to retain collected but unremitted SUT.

The court finds that the Director's methods for computing SUT satisfy the reasonableness requirements set forth in relevant case law; the Director did not utilize an aberrant methodology. Rather, in accordance with statutory authority, the Director calculated SUT with the only comprehensive records received. Plaintiff fails to overcome the defendant's presumption of correctness. Plaintiff's insufficient recordkeeping and misplaced SUT crediting is not enough to qualify as "cogent evidence [that is] 'definite, positive and certain in quality and quantity.'" Yilmaz, Inc. v. Dir., Div. of Taxation, 22 N.J. Tax 204, 236 (Tax 2005), aff'd, 390 N.J. Super. 435 (App. Div. 2007). As such, the court grants the Director's motion for summary judgment as to the SUT assessment.

**The Director's Assessment of Corporate Business Tax against the E.S.S. Company**

The Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -41 ("CBT Act") imposes:

> [A]n annual franchise tax for each year, as hereinafter provided, for the privilege of having or exercising its corporate franchise in this

State, or for the privilege of deriving receipts from sources within this State, or for the privilege of engaging in contacts within this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.

Since July 1, 1986, the portions of a corporation's entire net income, which may be apportionable to New Jersey, measure the CBT. N.J.S.A. 54:10A-5. N.J.S.A. 54:10A-4(k) details the computation of the entire net income. N.J.S.A. 54:10A-6, as amended, prescribes the applicable franchise tax assessed annually.

As is the case with the SUT, the CBT grants the Director broad authority in the administration and collection of the tax. Pursuant to N.J.S.A. 54:10A-14, the Director can require a taxpayer to produce copies of state and federal tax returns by general rule or specific notice. The director is also empowered to:

Require all taxpayers to keep such records as he may prescribe, and he may require the production of books, papers, documents, and other data, to provide or secure information pertinent to the determination of the tax hereunder and the enforcement and collection thereof. The [Director] may, also, by general rule or by specific notice require any taxpayer to make and file information returns, under oath, of facts pertinent to the determination of the tax or liability for tax hereunder, pursuant to such regulations, at such times and in such form and manner and to such extent as he may prescribe pursuant to law.

[N.J.S.A. 54:10A-14 (b)].

Moreover, the CBT statute expressly requires every domestic and foreign corporation subject to CBT to:

…keep all records used to determine its tax liability and such other records as the Director of the Division of Taxation may by regulation require. The records shall be available for inspection and examination at any time upon demand by the director or his duly authorized agent or employee and shall be preserved for a period of

five years, except that the director may consent to their destruction within that period or may require that they be kept longer.

[N.J.S.A. 54:10A-14.1].

The Director's authority to review taxpayer returns, reports and documents and to assess additional CBT is further detailed in N.J.S.A. 54:49-6 and 54:50-2 (State Uniform Tax Procedure Law), as provided in N.J.S.A. 54:10A-19.1(d). N.J.S.A. 54:49-6 (a) provides:

> After a return or report is filed under the provisions of any State tax law, the director shall cause the same to be examined and may make such further audit or investigation as he may deem necessary, and if therefrom he shall determine that there is a deficiency with respect to the payment of any tax due under such law, he shall assess the additional taxes, penalties, if any, pursuant to any State tax law or pursuant to this subtitle, and interest at the rate of three percentage points above the prime rate due the State from such taxpayer assessed for each month or fraction thereof, compounded annually at the end of each year, from the date the tax was originally due until the date of actual payment, give notice of such assessment to the taxpayer, and make demand upon him for payment.

The implementing regulations concerning CBT are found at N.J.A.C. 18:7-1.1 to -20.3.

The undisputed facts in this case are that CBT returns were not timely filed, and those returns that were ultimately filed during the audit period lacked support for the deductions taken. The court finds that the Director's methodology was reasonable and plaintiff fails to overcome the presumption of correctness. As such, the court grants the Director's motion for summary judgment as to the CBT assessment.

**The Director's Assessment of Gross Income Tax – Employer Withholding against the E.S.S. Company**

The GIT Act provides that employers and others designated by law are required to deduct and withhold personal gross income tax on non-exempt wages subject to the tax. N.J.S.A. 54A:7-

1. Although not provided at the time of the audit, the Company provided sufficient evidence to demonstrate that it leased employees during part of the 2010 audit year from an outside contractor, Allegiant Professional Business Services, which remitted all applicable payroll taxes for those services. Thereafter, the Company hired its own employees and retained the services of Prime Payroll to provide payroll and to withhold the appropriate payroll taxes and remit them to the Division. The Company also retained Prime Payroll to file the necessary payroll tax returns. The auditor's position that "The 2010 GIT period was also arbitrarily assessed to protect the interests of the State if the information provided should yield additional findings." is unconvincing when compared to Daraio's deposition testimony and the NJ927 Employer Quarterly reports provided. Accordingly, the Director's motion for summary judgment on the additional GIT assessment is denied and the Company's cross-motion for summary judgment is granted.

**Daraio as a Responsible Party**

The Legislature declared that an entity's corporate officers and employees will have personal liability for the entity's outstanding tax obligations in defined circumstances. According to N.J.S.A. 54:32B-2(w), a "person required to collect" sales tax includes "any officer or employee of a corporation or of a dissolved corporation who as such officer or employee is under a duty to act for such corporation in complying with any requirement of" the Sales and Use Tax Act. The personal liability of persons required to collect sales tax is established in N.J.S.A. 54:32B-14(a). That statute provides "[e]very person required to collect any tax imposed by this act shall be personally liable for the tax imposed, collected or required to be collected under this act."

N.J.S.A. 54A:9-6(g), a provision of the Gross Income Tax Act, establishes the penalty for failure to remit withheld taxes to the Director:

> [a]ny person required to collect, truthfully account for, and pay over the tax imposed by this act who willfully fails to collect such tax or

17

truthfully account for and pay over such tax or willfully attempts in any manner to evade or defeat the tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of tax evaded, or not collected, or not accounted for and paid over.

A fair review of the undisputed facts leads to the conclusion that the Company charged and collected SUT from Verizon and Meridian during the fourth quarter of 2009 and during 2010 while Daraio was running the Company. Daraio as the sole shareholder, president, and manager of the Company during that time satisfies the criteria for a responsible person pursuant to the statute. Furthermore, once collected, both the Company and Daraio as a responsible person, had the statutory duty to remit the collected SUT notwithstanding any confusion or doubts as to the taxable status of certain flagging rentals. The undisputed facts conclusively establish that Daraio, upon her return from incarceration, was not only aware that the Company was collecting SUT, but it was she who made the decision to not remit those funds to the appropriate government authorities, and to credit open invoices in 2010. Accordingly, the Director's responsible officer determination is supported by substantial credible evidence, which has not been seriously contested by Daraio.

## III. Conclusion

For the reasons set forth above, the court partially grants the defendant's motion for summary judgment as to Plaintiff E.S.S. Co. docket number 007589-2016. The motion is granted as to SUT and CBT and denied as to GIT. The court also partially grants the defendant's motion for summary judgment under docket 007595-2016 as to Plaintiff Dorothea H. Daraio but limits plaintiff's responsible person status to the fourth quarter of 2009, and 2010.

The E.S.S. Co. cross-motion for summary judgment as to GIT is granted, and as to SUT and CBT is denied. Plaintiff Daraio's cross-motion for summary judgment is granted in part as to the limitation on her responsible person liability. Defendant shall provide the calculation of

18

plaintiff Daraio's liability, subtracting the taxes for the period of her incarceration to this court within 30 days, pursuant to <u>R.</u> 8:9-3.

/s/ Mary Siobhan Brennan
Mary Siobhan Brennan, J.T.C.